Cedric Johnson # G03156
**FULL NAME**

**COMMITTED NAME (if different)**

P.O. Box 500
**FULL ADDRESS INCLUDING NAME OF INSTITUTION**

CIM-B2-212

Chino, CA 91708
**PRISON NUMBER (if applicable)**

CLERK, U.S. DISTRICT COURT
3/31/24
CENTRAL DISTRICT OF CALIFORNIA
BY: CS DEPUTY

Received **3-26-24**
(Date)
Scanned at CIM and E-mailed
on **3-26-24** by _____
(Date)      (Initials)
Number of pages scanned:
**96**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JOHNSON, CEDRIC GARNETT

                        PLAINTIFF,

                v.

TRAVIS PENNINGTON, Acting Warden;
(continued below)

                        DEFENDANT(S).

**CASE NUMBER**

## EDCV24-678-DDP(PVC)

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** *(Check one)*
☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☒No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

------

(continued from above)
D. MORTIMER, Correctional Employee (rank unknown); D. TRISTAN, Correctional
Lieutenant; R. PAREDES, Correctional Sergeant; J. CAROPRESO, Correctional Officer;
T. BILLINGTON, Correctional Officer; R. ROSS, Correctional Officer; S. HALLIS,
Correctional Officer; K. GOLECO, Correctional Officer; L. QUIROZ, Correctional
Associate Warden; T. PENNINGTON, Chief Deputy Warden/Reviewing Authority;
H. MOSELEY, Chief of Appeals/Reviewing Authority,

a.  Parties to this previous lawsuit:
Plaintiff _____

_____

Defendants _____

_____

b.  Court _____

_____

c.  Docket or case number _____

d.  Name of judge to whom case was assigned _____

e.  Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _____

f.  Issues raised: _____

_____

_____

g.  Approximate date of filing lawsuit: _____

h.  Approximate date of disposition _____

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.  Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2.  Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

If your answer is no, explain why not _____

_____

_____

3.  Is the grievance procedure completed? ☒ Yes   ☐ No

If your answer is no, explain why not _____

_____

4.  Please attach copies of papers related to the grievance procedure.   SEE ENCLOSURES

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff ___Cedric Johnson___
(print plaintiff's name)

who presently resides at ___California Institution for Men ("CIM")___,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
CIM, Chino, California
(institution/city where violation occurred)

on (date or dates) <u>between 20 July 2022 and 09 September 2023 (Claim One only)</u> .
<span style="margin-left:3em">(Claim I)</span><span style="margin-left:6em">(Claim II)</span><span style="margin-left:6em">(Claim III)</span>

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant <u>ALL DEFENDANTS LISTED ON PAGE 1 OF 6 (at caption)</u> resides or works at
<span style="margin-left:2em">(full name of first defendant)</span>
<u>CIM AND/OR CDCR;</u>
<span style="margin-left:2em">(full address of first defendant)</span>
<u>AND THEIR KNOWN TITLES ARE REFERENCED CLEARLY</u>
<span style="margin-left:2em">(defendant's position and title, if any)</span>

The defendant is sued in his/her (Check one or both): ☐ individual ☒ official capacity.

Explain how this defendant was acting under color of law:
<u>All Defendants submitted their acts upon official state prison records, in</u>
<u>their official capacities only.</u>

2. Defendant _____ resides or works at
<span style="margin-left:2em">(full name of first defendant)</span>
_____
<span style="margin-left:2em">(full address of first defendant)</span>
_____
<span style="margin-left:2em">(defendant's position and title, if any)</span>

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
_____
_____

3. Defendant _____ resides or works at
<span style="margin-left:2em">(full name of first defendant)</span>
_____
<span style="margin-left:2em">(full address of first defendant)</span>
_____
<span style="margin-left:2em">(defendant's position and title, if any)</span>

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
_____
_____

4.  Defendant _____ resides or works at
        (full name of first defendant)

    _____
        (full address of first defendant)

    _____
        (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

5.  Defendant _____ resides or works at
        (full name of first defendant)

    _____
        (full address of first defendant)

    _____
        (defendant's position and title, if any)

    The defendant is sued in his/her (Check one or both): ☐ individual    ☐ official capacity.

    Explain how this defendant was acting under color of law:

    _____

    _____

## D. CLAIMS*

CLAIM I

The following civil right has been violated:

Whether by 18 U.S.C. §§ 241 and/or 242, Defendants, collectively in conspiracy, embarked to deprive Plaintiff of his rights to equal protection and due process as guaranteed by the Fifth and Fourteenth Amendments.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

(1)   In short, Defendants Mortimer, Tristan, Paredes, Caropreso, Billington, Ross, Hallis, Goleco, Quiroz, Pennington, and/or Moseley (see caption page), between 20 July 2022 and 09 September 2023, manufactured purported evidence to support false allegations of A) conspiracy to distribute controlled substances, and B) conspiracy to introduce controlled substances, that they individually and collectively did not properly disclose and neither provided a clear chain of evidence to exist, positive possession of controlled substances evidence linking Plaintiff to the alleged importation into a prison-controlled environment, positive toxicology findings resultant from Plaintiff, nor a crime report prior to any adverse prison disciplinary hearing being held.

(2)   Further, Plaintiff alleges Defendants (aforementioned) deliberately tainted the disciplinary hearing process by A) imposing an automated and convenient guilty plea or verdict, without any consent or statement of such declaration

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

by Plaintiff at any time of audio or audiovisual recording of proceedings; and B) refused to call Plaintiff's supporting witness -- a CDCR employee at CIM -- for questioning, which may have exonerated him of the allegations.

(3)   Plaintiff herein encloses the relevant records he has been able to retrieve to support the above.

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

The entirety of the disciplinary hearing results and allegations ordered for dismissial and vacated, with all matters of disciplinary dispositions (punishment) set-aside, and all privileges restored to good standing.

3.14.24
*(Date)*

*(Signature of Plaintiff)*

ENCLOSURES

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 1
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:**

### INCIDENT REPORT SUMMARY

| | |
|---|---|
| **INSTITUTION/PAROLE REGION:** CIM - California Institution for Men | |
| **REPORTING FACILITY/PAROLE UNIT:** CIM-D - CIM-Facility D | |
| **INCIDENT DATE:** 07/21/2022 | **INCIDENT TIME:** 14:00:00 |
| **DISCOVERY DATE:** 07/21/2022 | **DISCOVERY TIME:** 14:00:00 |
| **WATCH:** 2nd Watch | |

| **STATUS:** Closed | **AS OF DATE:** 08/10/2022 |
|---|---|

| | |
|---|---|
| **CRISIS RESPONSE TEAM ACTIVATED:** No | **DA REFERRAL ELIGIBLE:** Yes |
| **AREA/LOCATION:** CENTRAL SERVICES | **HOUSING PROGRAM ASSIGNMENT:** General Population |
| **ASU YARD TYPE:** Not Applicable | |
| **VIDEO SURVEILLANCE OF INCIDENT:** No | |

| **INCIDENT CATEGORY** | **INCIDENT TYPE** |
|---|---|
| Stimulants and Sedatives | Conspiracy to Distribute Controlled Substance |
| Stimulants and Sedatives | Conspiracy to Introduce Controlled Substance |

#### SYNOPSIS

On July 21, 2022, the CIM ISU determined Inmates Ruppel, T. CDCR# BP2012 and Johnson, C. CDCR# G03156 were involved in conspiracy to introduce controlled substances for distribution, utilizing the assistance of civilians, Kevin Vasquez, Rebecca Cline and Erika Dunn.

#### IMMEDIATE NOTIFICATIONS

NONE

| | |
|---|---|
| **DOJ REPORTABLE:** Not Applicable | |
| **HIGH PROFILE INCIDENT:** No | **NAME OF ASSISTING LEA:** |
| **MUTUAL-AID/LEA:** Not Applicable | |
| **MAJOR MEDIA ATTENTION:** No | **NAME OF MEDIA:** |

| **INCIDENT STG NEXUS:** No | | |
|---|---|---|
| **STG NAME** | **STG SET** | **STG SUBSET** |
| NONE | | |

| **STG NOT LISTED** |
|---|
| NONE |

| **UNCONTROLLED WEAPONS** | **QUANTITY** |
|---|---|
| Not Applicable | |

| **CONTROLLED SUBSTANCES** | **QUANTITY** | **QUANTITY TYPE** |
|---|---|---|
| Methamphetamine | 100 | With Packaging, In Grams |
| Heroin | 3.6 | With Packaging, In Grams |

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 2
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** ⬛⬛⬛⬛⬛

## STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Tristan, D⬛⬛⬛⬛
**TITLE:** Lieutenant
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 250161 - ISU Lieutenant
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Incident Commander

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

**TREATMENT:**                    **LOCATION CARE PROVIDED:**

**REPORTABLE DEATH:** Not Applicable          **MANNER OF DEATH:**
**DATE OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

| CDCR | INCIDENT REPORT PACKAGE | PAGE: 1 |
|---|---|---|
| REPORT NO. IRTR161 - 12 | INCIDENT LOG NUMBER: 000000000042258 | PROCESSED: 08/16/2022 19:01 |
| | | REQUESTOR: ~~████████~~ |

## INCIDENT REPORT SUMMARY

| | |
|---|---|
| **INSTITUTION/PAROLE REGION:** CIM - California Institution for Men | |
| **REPORTING FACILITY/PAROLE UNIT:** CIM-D - CIM-Facility D | |
| **INCIDENT DATE:** 07/21/2022 | **INCIDENT TIME:** 14:00:00 |
| **DISCOVERY DATE:** 07/21/2022 | **DISCOVERY TIME:** 14:00:00 |
| **WATCH:** 2nd Watch | |

| **STATUS:** Closed | **AS OF DATE:** 08/10/2022 |
|---|---|

| | |
|---|---|
| **CRISIS RESPONSE TEAM ACTIVATED:** No | **DA REFERRAL ELIGIBLE:** Yes |
| **AREA/LOCATION:** CENTRAL SERVICES | **HOUSING PROGRAM ASSIGNMENT:** General Population |
| **ASU YARD TYPE:** Not Applicable | |
| **VIDEO SURVEILLANCE OF INCIDENT:** No | |

| INCIDENT CATEGORY | INCIDENT TYPE |
|---|---|
| Stimulants and Sedatives | Conspiracy to Distribute Controlled Substance |
| Stimulants and Sedatives | Conspiracy to Introduce Controlled Substance |

### SYNOPSIS

On July 21, 2022, the CIM ISU determined Inmates Ruppel, T. CDCR# BP2012 and Johnson, C. CDCR# G03156 were involved in conspiracy to introduce controlled substances for distribution, utilizing the assistance of civilians, Kevin Vasquez, Rebecca Cline and Erika Dunn.

### IMMEDIATE NOTIFICATIONS

NONE

| | |
|---|---|
| **DOJ REPORTABLE:** Not Applicable | |
| **HIGH PROFILE INCIDENT:** No | **NAME OF ASSISTING LEA:** |
| **MUTUAL-AID/LEA:** Not Applicable | |
| **MAJOR MEDIA ATTENTION:** No | **NAME OF MEDIA:** |

| **INCIDENT STG NEXUS:** No | | |
|---|---|---|
| **STG NAME** | **STG SET** | **STG SUBSET** |
| NONE | | |

| STG NOT LISTED |
|---|
| NONE |

| UNCONTROLLED WEAPONS | QUANTITY |
|---|---|
| Not Applicable | |

| CONTROLLED SUBSTANCES | QUANTITY | QUANTITY TYPE |
|---|---|---|
| Methamphetamine | 100 | With Packaging, In Grams |
| Heroin | 3.6 | With Packaging, In Grams |

CDCR
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 2
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** ▉▉▉▉▉▉▉

## STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Tristan, D▉▉▉▉▉▉▉
**TITLE:** Lieutenant
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 250161 - ISU Lieutenant
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Incident Commander

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

| TREATMENT: | LOCATION CARE PROVIDED: |
|---|---|

**REPORTABLE DEATH:** Not Applicable
**DATE OF DEATH:**

**MANNER OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 3
**PROCESSED:** 08/16/2022  19:01
**REQUESTOR:** ▬▬▬▬

### STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Paredes, R▬▬▬▬
**TITLE:** Sergeant
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 250392 - ISU Sergeant 2
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Response Supervisor

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

**TREATMENT:**

**LOCATION CARE PROVIDED:**

**REPORTABLE DEATH:** Not Applicable
**DATE OF DEATH:**

**MANNER OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

| CDCR | **INCIDENT REPORT PACKAGE** | **PAGE:** 4 |
|---|---|---|

**REPORT NO. IRTR161 - 12**

**INCIDENT LOG NUMBER: 000000000042258**

**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:**

## STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Caropreso, J
**TITLE:** Officer
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 251477 - ISU Officer 7
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Escort
Responder
Clothed Body Search
Unclothed Body Search

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

| TREATMENT: | LOCATION CARE PROVIDED: |
|---|---|

**REPORTABLE DEATH:** Not Applicable
**DATE OF DEATH:**

**MANNER OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 5
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** ▓▓▓▓▓▓▓

### STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Billington, T▓▓▓▓▓▓▓
**TITLE:** Officer
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 251472 - ISU Officer 2
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Responder

Escort

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

| TREATMENT: | LOCATION CARE PROVIDED: |
|---|---|

**REPORTABLE DEATH:** Not Applicable
**DATE OF DEATH:**

**MANNER OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

PAGE:   6
PROCESSED: 08/16/2022  19:01
REQUESTOR: �â–ˆâ–ˆâ–ˆâ–ˆ

---

### STAFF INVOLVED

ASSIGNED INSTITUTION/PAROLE REGION: CIM - California Institution for Men
ASSIGNED FACILITY/PAROLE UNIT: CIM-S - CIM-Central Service

STAFF NAME: Ross, R▬▬▬▬▬
TITLE: Officer
STAFF TYPE: Peace Officer

---

POST DESCRIPTION: 251473 - ISU Officer 3
CELL FRONT USE OF FORCE: Not Applicable

---

### INVOLVEMENT TYPE

Escort
Responder

---

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

---

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

---

### DESCRIPTION OF INJURY

NONE

TREATMENT:                                    LOCATION CARE PROVIDED:

---

REPORTABLE DEATH: Not Applicable                MANNER OF DEATH:
DATE OF DEATH:

---

### STAFF VEHICLE INVOLVED

STAFF VEHICLE INVOLVED: Not Applicable           PLATE #:
VEHICLE TYPE: Not Applicable            VEHICLE YEAR:
MAKE:                                              MODEL:
COLOR:

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 7
**PROCESSED:** 08/16/2022  19:01
**REQUESTOR:**

### STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Hallis, S
**TITLE:** Officer
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 251471 - ISU Officer 1
**CELL FRONT USE OF FORCE:** Not Applicable

#### INVOLVEMENT TYPE

Primary
Evidence
Escort

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

#### DESCRIPTION OF INJURY

NONE

| TREATMENT: | LOCATION CARE PROVIDED: |
|---|---|

**REPORTABLE DEATH:** Not Applicable
**DATE OF DEATH:**

**MANNER OF DEATH:**

#### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

INCIDENT LOG NUMBER: 000000000042258

PAGE:     8
PROCESSED: 08/16/2022  19:01
REQUESTOR: ▓▓▓▓▓▓

## OFFENDER INVOLVED

| | |
|---|---|
| **CDC #:** BP2012 | **OFFENDER NAME:** Ruppel, Thomas J. |
| **MENTAL HEALTH CODE:** ▓▓▓▓▓▓▓▓▓▓ | **DDP CODE:** ▓▓▓▓▓▓ |
| **DPPV CODE:** None | **GENDER:** Male |
| **RACE:** White | **ETHNICITY:** White |
| **CONTROL DATE:** ▓▓▓▓▓▓ | **TYPE:** EPRD |
| **INVOLVEMENT TYPE:** Suspect | **RVR LOG #:** |
| **VIOLENCE TYPE:** Not Applicable | |
| **EXTRACTION:** Not Applicable | |

| | |
|---|---|
| **SECURITY LEVEL:** Level 1 | **PLACEMENT SCORE:** 18 |
| **HOUSING PROGRAM:** Non-Designated Program Facility | **CUSTODY CLASSIFICATION:** Minimum (A) |

### CONTROLLED WEAPONS

Not Applicable

| **REPORTABLE INJURY** | **INJURY LOCATION** | **SBI TYPE** |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

| **TREATMENT:** | **LOCATION CARE PROVIDED:** |
|---|---|

| | |
|---|---|
| **REPORTABLE DEATH:** Not Applicable | **MANNER OF DEATH:** |
| **DATE OF DEATH:** | |

| | |
|---|---|
| **VIDEO INTERVIEW:** Not Applicable | **VIDEO INTERVIEW W/ 48 HOURS:** Not Applicable |
| **VIDEO FOLLOWED POLICY:** Not Applicable | |

### ARREST

| | |
|---|---|
| **ARRESTED NEW/PENDING CHARGES:** Not Applicable | |
| **ARRESTING AGENCY:** | |
| **REPORT NUMBER:** | |
| **BOOKING NUMBER:** | |
| **CUSTODY LOCATION:** | |
| **OFFENSE TITLE/CODE:** | |

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

INCIDENT LOG NUMBER: 000000000042258

PAGE:    9
PROCESSED: 08/16/2022  19:01
REQUESTOR: ▨▨▨▨▨▨▨

| STG AFFILIATIONS | | |
|---|---|---|
| STG NAME | STG SET | STG SUBSET |
| ▨▨▨▨▨▨▨ | ▨▨▨▨▨▨▨ | |

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

PAGE:   10
PROCESSED: 08/16/2022  19:01
REQUESTOR: ▓▓▓▓▓▓▓▓

## OFFENDER INVOLVED

| | |
|---|---|
| **CDC #:** G03156 | **OFFENDER NAME:** Johnson, Cedric G. |
| **MENTAL HEALTH CODE:** ▓▓▓▓▓▓▓▓▓▓▓▓ | **DDP CODE:** ▓▓▓▓▓▓▓▓ |
| **DPPV CODE:** None | **GENDER:** Male |
| **RACE:** Black | **ETHNICITY:** Black |
| **CONTROL DATE:** ▓▓▓▓▓▓▓ | **TYPE:** EPRD |
| **INVOLVEMENT TYPE:** Suspect | **RVR LOG #:** |
| **VIOLENCE TYPE:** Not Applicable | |
| **EXTRACTION:** Not Applicable | |

| | |
|---|---|
| **SECURITY LEVEL:** Level 1 | **PLACEMENT SCORE:** 5 |
| **HOUSING PROGRAM:** Non-Designated Program Facility | **CUSTODY CLASSIFICATION:** Medium (A) |

### CONTROLLED WEAPONS

Not Applicable

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

**TREATMENT:**                                    **LOCATION CARE PROVIDED:**

| | |
|---|---|
| **REPORTABLE DEATH:** Not Applicable | **MANNER OF DEATH:** |
| **DATE OF DEATH:** | |

| | |
|---|---|
| **VIDEO INTERVIEW:** Not Applicable | **VIDEO INTERVIEW W/ 48 HOURS:** Not Applicable |
| **VIDEO FOLLOWED POLICY:** Not Applicable | |

### ARREST

**ARRESTED NEW/PENDING
CHARGES:** Not Applicable
**ARRESTING AGENCY:**
**REPORT NUMBER:**
**BOOKING NUMBER:**
**CUSTODY LOCATION:**
**OFFENSE TITLE/CODE:**

| CDCR | INCIDENT REPORT PACKAGE | PAGE: 3 |
|---|---|---|
| REPORT NO. IRTR161 - 12 | | PROCESSED: 08/16/2022 19:01 |
| | INCIDENT LOG NUMBER: 000000000042258 | REQUESTOR: ▆▆▆▆▆ |

### STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Paredes, R▆▆▆▆▆▆
**TITLE:** Sergeant
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 250392 - ISU Sergeant 2
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Response Supervisor

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

**TREATMENT:**                    **LOCATION CARE PROVIDED:**

**REPORTABLE DEATH:** Not Applicable
**DATE OF DEATH:**                    **MANNER OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

INCIDENT LOG NUMBER: 000000000042258

PAGE:   4
PROCESSED: 08/16/2022  19:01
REQUESTOR: ▓▓▓▓▓▓▓

### STAFF INVOLVED

ASSIGNED INSTITUTION/PAROLE REGION: CIM - California Institution for Men
ASSIGNED FACILITY/PAROLE UNIT: CIM-S - CIM-Central Service

STAFF NAME: Caropreso, J▓▓▓▓▓▓
TITLE: Officer
STAFF TYPE: Peace Officer

POST DESCRIPTION: 251477 - ISU Officer 7
CELL FRONT USE OF FORCE: Not Applicable

### INVOLVEMENT TYPE

Escort
Responder
Clothed Body Search
Unclothed Body Search

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

TREATMENT:                     LOCATION CARE PROVIDED:

REPORTABLE DEATH: Not Applicable          MANNER OF DEATH:
DATE OF DEATH:

### STAFF VEHICLE INVOLVED

STAFF VEHICLE INVOLVED: Not Applicable          PLATE #:
VEHICLE TYPE: Not Applicable          VEHICLE YEAR:
MAKE:          MODEL:
COLOR:

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 5
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** ▓▓▓▓▓▓▓

### STAFF INVOLVED

| | |
|---|---|
| **ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men | **STAFF NAME:** Billington, T▓▓▓▓▓▓ |
| **ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service | **TITLE:** Officer |
| | **STAFF TYPE:** Peace Officer |

**POST DESCRIPTION:** 251472 - ISU Officer 2
**CELL FRONT USE OF FORCE:** Not Applicable

#### INVOLVEMENT TYPE

Responder

Escort

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

#### DESCRIPTION OF INJURY

NONE

| TREATMENT: | LOCATION CARE PROVIDED: |
|---|---|

| **REPORTABLE DEATH:** Not Applicable | **MANNER OF DEATH:** |
|---|---|
| **DATE OF DEATH:** | |

#### STAFF VEHICLE INVOLVED

| | |
|---|---|
| **STAFF VEHICLE INVOLVED:** Not Applicable | **PLATE #:** |
| **VEHICLE TYPE:** Not Applicable | **VEHICLE YEAR:** |
| **MAKE:** | **MODEL:** |
| **COLOR:** | |

| CDCR | **INCIDENT REPORT PACKAGE** | **PAGE:** 6 |
|------|------|------|
| **REPORT NO. IRTR161 - 12** | **INCIDENT LOG NUMBER:** 000000000042258 | **PROCESSED:** 08/16/2022 19:01 |
| | | **REQUESTOR:** ▉▉▉▉▉▉▉ |

### STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Ross, R▉▉▉▉▉▉▉▉
**TITLE:** Officer
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 251473 - ISU Officer 3
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Escort

Responder

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|------|------|------|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|------|------|------|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

**TREATMENT:**                    **LOCATION CARE PROVIDED:**

**REPORTABLE DEATH:** Not Applicable                    **MANNER OF DEATH:**
**DATE OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable              **PLATE #:**
**VEHICLE TYPE:** Not Applicable                **VEHICLE YEAR:**
**MAKE:**                          **MODEL:**
**COLOR:**

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 7
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** ▓▓▓▓▓▓

## STAFF INVOLVED

**ASSIGNED INSTITUTION/PAROLE REGION:** CIM - California Institution for Men
**ASSIGNED FACILITY/PAROLE UNIT:** CIM-S - CIM-Central Service

**STAFF NAME:** Hallis, S▓▓▓▓▓▓
**TITLE:** Officer
**STAFF TYPE:** Peace Officer

**POST DESCRIPTION:** 251471 - ISU Officer 1
**CELL FRONT USE OF FORCE:** Not Applicable

### INVOLVEMENT TYPE

Primary
Evidence
Escort

| TYPE OF FORCE USED BY REPORTING STAFF | NUMBER OF SHOTS FIRED/DEPLOYMENTS/STRIKES | REPORTABLE USE OF FORCE RESULT |
|---|---|---|
| Not Applicable | | |

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY

NONE

**TREATMENT:**                    **LOCATION CARE PROVIDED:**

**REPORTABLE DEATH:** Not Applicable
**DATE OF DEATH:**

**MANNER OF DEATH:**

### STAFF VEHICLE INVOLVED

**STAFF VEHICLE INVOLVED:** Not Applicable
**VEHICLE TYPE:** Not Applicable
**MAKE:**
**COLOR:**

**PLATE #:**
**VEHICLE YEAR:**
**MODEL:**

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

PAGE: 8
PROCESSED: 08/16/2022 19:01
REQUESTOR:

### OFFENDER INVOLVED

| | |
|---|---|
| **CDC #:** BP2012 | **OFFENDER NAME:** Ruppel, Thomas J. |
| **MENTAL HEALTH CODE:** | **DDP CODE:** |
| **DPPV CODE:** None | **GENDER:** Male |
| **RACE:** White | **ETHNICITY:** White |
| **CONTROL DATE:** | **TYPE:** EPRD |
| **INVOLVEMENT TYPE:** Suspect | **RVR LOG #:** |
| **VIOLENCE TYPE:** Not Applicable | |
| **EXTRACTION:** Not Applicable | |

| | |
|---|---|
| **SECURITY LEVEL:** Level 1 | **PLACEMENT SCORE:** 18 |
| **HOUSING PROGRAM:** Non-Designated Program Facility | **CUSTODY CLASSIFICATION:** Minimum (A) |

#### CONTROLLED WEAPONS
Not Applicable

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

#### DESCRIPTION OF INJURY
NONE

| | |
|---|---|
| **TREATMENT:** | **LOCATION CARE PROVIDED:** |

| | |
|---|---|
| **REPORTABLE DEATH:** Not Applicable | **MANNER OF DEATH:** |
| **DATE OF DEATH:** | |

| | |
|---|---|
| **VIDEO INTERVIEW:** Not Applicable | **VIDEO INTERVIEW W/ 48 HOURS:** Not Applicable |
| **VIDEO FOLLOWED POLICY:** Not Applicable | |

#### ARREST

**ARRESTED NEW/PENDING CHARGES:** Not Applicable
**ARRESTING AGENCY:**
**REPORT NUMBER:**
**BOOKING NUMBER:**
**CUSTODY LOCATION:**
**OFFENSE TITLE/CODE:**

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

INCIDENT LOG NUMBER: 000000000042258

PAGE:     9
PROCESSED: 08/16/2022 19:01
REQUESTOR: ▒▒▒▒▒▒▒▒▒

| STG AFFILIATIONS | | |
|---|---|---|
| **STG NAME** | **STG SET** | **STG SUBSET** |
| ▒▒▒▒▒▒▒▒▒▒ | ▒▒▒▒▒▒▒▒▒▒▒▒ | |

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:**   10
**PROCESSED:** 08/16/2022  19:01
**REQUESTOR:** ▓▓▓▓▓▓▓

### OFFENDER INVOLVED

| | |
|---|---|
| **CDC #:** G03156 | **OFFENDER NAME:** Johnson, Cedric G. |
| **MENTAL HEALTH CODE:** ▓▓▓▓▓▓▓▓▓▓ | **DDP CODE:** ▓▓▓▓▓▓ |
| **DPPV CODE:** None | **GENDER:** Male |
| **RACE:** Black | **ETHNICITY:** Black |
| **CONTROL DATE:** ▓▓▓▓▓▓ | **TYPE:** EPRD |
| **INVOLVEMENT TYPE:** Suspect | **RVR LOG #:** |
| **VIOLENCE TYPE:** Not Applicable | |
| **EXTRACTION:** Not Applicable | |

| | |
|---|---|
| **SECURITY LEVEL:** Level 1 | **PLACEMENT SCORE:** 5 |
| **HOUSING PROGRAM:** Non-Designated Program Facility | **CUSTODY CLASSIFICATION:** Medium (A) |

### CONTROLLED WEAPONS
Not Applicable

| REPORTABLE INJURY | INJURY LOCATION | SBI TYPE |
|---|---|---|
| Not Applicable | | |

### DESCRIPTION OF INJURY
NONE

**TREATMENT:**                    **LOCATION CARE PROVIDED:**

| | |
|---|---|
| **REPORTABLE DEATH:** Not Applicable | **MANNER OF DEATH:** |
| **DATE OF DEATH:** | |

| | |
|---|---|
| **VIDEO INTERVIEW:** Not Applicable | **VIDEO INTERVIEW W/ 48 HOURS:** Not Applicable |
| **VIDEO FOLLOWED POLICY:** Not Applicable | |

### ARREST

**ARRESTED NEW/PENDING
CHARGES:** Not Applicable
**ARRESTING AGENCY:**
**REPORT NUMBER:**
**BOOKING NUMBER:**
**CUSTODY LOCATION:**
**OFFENSE TITLE/CODE:**

CDCR
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 11
**PROCESSED:** 08/16/2022  19:01
**REQUESTOR:** ▓▓▓▓▓▓

| STG AFFILIATIONS | | |
|---|---|---|
| STG NAME | STG SET | STG SUBSET |
| ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ | |

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 12
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** ████████████

### STAFF NARRATIVE

**STAFF NAME:** Tristan, D███████████
**CREATED DATE:** 07/27/2022

**NARRATIVE TYPE:** Initial Report
**CREATED TIME:** 12:58:19

#### NARRATIVE

On Wednesday, July 20, 2022, the California Institution for Men (CIM) Investigative Services Unit (ISU), received information from the San Bernardino County Sheriff's Department (SBSD) regarding a conspiracy to introduce controlled substances. Specifically, SBSD indicated two civilians ██████ Cline California Driver's License (CDL#) ████████ and ████████ Vasquez CDL# ████████, were arrested near the institution for being in possession of controlled substances. Vasquez and Cline were found in possession of numerous bindles of methamphetamines and heroin. SBSD indicated Vasquez and Cline were planning on dropping the narcotics off at CIM. Based on this information, ISU initiated an investigation to Vasquez's and Cline's involvement in a conspiracy to introduce controlled substances into CIM.

On July 20, 2022, ISU Sergeant (Sgt.) R. Paredes briefed ISU Officers S. Hallis and R. Ross on the information provided by SBSD and instructed them to interview Vasquez and Cline at the SBSD West Valley Detention Center (WVDC). Officers Hallis and Ross conducted separate interviews with Vasquez and Cline and learned the following:

Vasquez and Cline had been in communication with their friend "TJ/Freak", later identified as Inmate Ruppel, Thomas, CDCR# BP2012. Inmate Ruppel informed Vasquez and Cline they could earn between $400 and $700 if they picked up and delivered narcotics to the prison. Vasquez and Cline indicated they would be paid via Cash App after the narcotics had been delivered. On Wednesday, July 19, 2022, between 2330 and 0000 hours, Vasquez and Cline traveled to a 7-Eleven convenience store and met with a couple. The 7-Eleven was located near the Temecula Parkway exit off of the Interstate 15 (I-15) in the City of Temecula. Vasquez and Cline described the couple as an older black male and female who were waiting in a gray, two door, Ford Explorer. During the encounter, Vasquez entered 7-Eleven and Cline went and to speak to the female while the male went to Cline's vehicle and placed the narcotics inside. During their interaction, the female asked Cline to explain the details of the delivery at CIM. Cline explained, they were to pull into the driveway of CIM and toss the bag of narcotics next to a white sign on the right hand side. Cline and Vasquez were then supposed to make a U-turn and leave. Cline stated the females name was Erika but did not know the males name.

Once the delivery was made, Vasquez and Cline would receive their payment via Cash App. Vasquez and Cline explained all communications with Inmate Ruppel and the couple they met with was done over the phone. Vasquez was shown a photograph line up of the four inmates assigned to the CIM out-grounds crew and positively identified "TJ" as Inmate Ruppel, explaining they were friends from Menifee. Cline was shown a picture of Inmate Ruppel and stated, "That's Freak." Cline also stated she received twenty dollars in gas money via Cash App from an unidentified individual to deliver the narcotics.

On July 21, 2022, Officers Hallis and Ross returned to the WVDC and conducted a follow up interview with Cline. With the cooperation of the SBSD, Cline was temporarily allowed to have her cellular phone. Cline consented to allowing Officers Hallis and Ross view and take pictures of relevant text messages, photographs, Cash App payments and her call history. Cline showed Officers Hallis and Ross text messages she received from Inmate Ruppel which included a photograph of the location where the narcotics were to be dropped. Cline also had a text conversation discussing plans to drop the narcotics and inquiring if the drop has been completed. Cline showed Officer Hallis money transactions from Inmate Ruppel's Cash App account (username $Freaknasty). While viewing Cline's Cash App account, Officer Hallis discovered a payment of twenty dollar she received from a person named Cedric Johnson (username $Isafamily). Cline explained this money was for gas so she and Vasquez could deliver the narcotics. According to SOMS, Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156, housed at CIM. On February 12, 2020, a confidential memorandum was authored by Correctional Officer T. Billington, which identified Inmate Johnson as having the moniker "Isa" (similar to the Cash App name $Isafamily). Furthermore, according to SOMS Inmate Johnson's wife's name is Erika Dunn. Cline was shown a photograph of Erika Dunn and confirmed she was the female she and Vasquez met with at 7-Eleven. Cline was also shown a photograph of Inmate Johnson and confirmed she had seen him in the background during a FaceTime call with Inmate Ruppel.

While interviewing Cline and going through her phone, she received two calls from Inmate Ruppel. The first call was from a state phone and the second was from a contraband cellphone. Cline was allowed to answer the calls. During their discussions, Inmate Ruppel confirmed Cline has the narcotics still and asked what happened. Cline states she had car problems and was going to drop the narcotics that day. Inmate Ruppel tells Cline to wait because he may have an issue with his gate pass.

After returning to CIM, Officers Hallis and Ross briefed Sgt. Paredes of the information and evidence obtained during the interview. At approximately 1400 hours, it was determined there was sufficient evidence demonstrating Inmates Ruppel and Johnson conspired with civilians Vasquez, Cline and Dunn to introduce controlled substances into CIM for distribution. Sgt. Paredes instructed Officers Hallis, Ross, T. Billington and J. Caropreso to locate Inmates Johnson and Ruppel for the completion of Medical Reports of Injury or Unusual Occurrence (CDCR 7219) and placement into holding tanks pending transfer to the Administrative Segregation Unit (ASU). Inmates Johnson and Ruppel were located in Magnolia Hall (D12). Officers Hallis and Ross escorted Inmate Johnson to the South Clinic where Licensed Vocational Nurse (LVN) S. Rubalcaba completed the CDCR 7219 noting no injuries. Officers Hallis and Ross then escorted Inmate Johnson to the Program Office. Inmate Johnson was provided his Miranda Rights which he stated he understood and was willing to make a statement. Inmate Johnson was ordered to submit a urine sample for UA which he refused. Inmate Johnson was then placed into holding cell #4 pending transfer to ASU.

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 13
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** A. Palmer

### STAFF NARRATIVE

Officers Billington and Caropreso escorted Inmate Ruppel to the South Clinic where LVN S. Ackarman completed a CDCR 7219, noting no injuries. Officers Billington and Caropreso then escorted Inmate Ruppel to the Program Office. Inmate Ruppel was provided his Miranda Rights and elected to remain silent. Inmate Ruppel was ordered to provide a urine sample for UA and complied. Inmate Ruppel was then placed into holding cell #1 pending transfer to ASU. Officer Hallis returned to ISU and began processing all evidence collected. A total of 32 photographs were taken which were uploaded to the Law Enforcement Photographic Archival Device. Officer Hallis placed all other evidence into Sub-Evidence room locker #88.

The CIM ISU is currently still gathering evidence related to this incident. Upon completion of this investigation, Inmates Ruppel and Johnson will be issued Rules Violation Reports for Conspiring to Introduce/Distribute Controlled Substances. ISU will confer with the SBSD and the District Attorney regarding the possibility of additional charges.

D. Tristan
_____
STAFF SIGNATURE

**DATE:** 07/27/2022

**BADGE #:** 64652

**PERNR:** 40368

**NARRATIVE REVIEWED:** Yes
**REVIEWED DATE:** 07/29/2022

**REVIEWED BY STAFF:** Mortimer, D
**REVIEWED TIME:** 11:56:12

---

**STAFF NAME:** Tristan, D
**CREATED DATE:** 07/27/2022

**NARRATIVE TYPE:** Supplemental Report
**CREATED TIME:** 14:40:05

### NARRATIVE

It should be noted the CIM ISU obtained a copy of the San Bernadino County Sheriff's Department (SBSD) Crime Report, #222202448. The report states were located in a clear plastic sandwhich sized baggle. Within the baggies there were four medium sized bindles containing a white crystalline substance. Each bindle weighed approximately 25 grams. One bindle was opened and contained approximately 27 tiny bindles weighing approximately one gram each. One bindle also contained a tightly wrapped brown bindle of suspected heroin. The bindle of heroin weighed approximately 3.6 grams.

D. Tristan
_____
STAFF SIGNATURE

**DATE:** 07/27/2022

**BADGE #:** 64652

**PERNR:** 40368

**NARRATIVE REVIEWED:** Yes
**REVIEWED DATE:** 07/29/2022

**REVIEWED BY STAFF:** Mortimer, D
**REVIEWED TIME:** 11:57:32

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

PAGE:   14
PROCESSED: 08/16/2022  19:01
REQUESTOR: ▨▨▨▨▨

### STAFF NARRATIVE

STAFF NAME: Paredes, R▨▨▨▨▨

NARRATIVE TYPE: Initial Report

CREATED DATE: 07/27/2022

CREATED TIME: 12:50:49

#### NARRATIVE

On the morning of July 20, 2022, the California Institution for Men (CIM) Investigative Services Unit (ISU), was contacted by the San Bernardino County Sheriff's Department (SBSD) and informed that two civilians, Rebecca Cline and Kevin Vasquez were arrested near the institution for being in possession of controlled substances. Vasquez and Cline were found in possession of several bindles of methamphetamines and heroin. During their interview, SBSD learned Vasquez and Cline were planning on dropping the narcotics off at CIM. Based on the information provided by the SBSD, ISU initiated an investigation to Vasquez's and Cline's involvement in a conspiracy to introduce controlled substances into CIM.

On Thursday, July 20, 2022, while performing my duties as the Investigative Services Unit (ISU) Sergeant #2, I instructed ISU Officer S. Hallis and Officer R. Ross to go to the SBSD West Valley Detention Center (WVDC) to interview civilians Rebecca Cline California Driver's License Number (CDL#) ▨▨▨▨▨ and Kevin Vasquez CDL# ▨▨▨▨▨ because they were arrested near the institution for being in possession of controlled substances. Vasquez and Cline were found in possession of several bindles of methamphetamines and heroin. During their interview, SBSD learned Vasquez and Cline were planning on dropping the narcotics off at CIM.

Officer S. Hallis briefed me on the information and evidence obtained during the interview. Officer Hallis said Vasquez and Cline received a call from Inmate Ruppel, Thomas, California Department of Corrections and Rehabilitation number (CDCR#) BP2012 wanting him and Cline to meet up with a couple at a 7-Eleven convenience store in the City of Temecula to pick up narcotics. Vasquez and Cline were then supposed to drop the narcotics off at CIM and place it next to a sign located near the corner of Central Avenue and the prison entrance. Officer Hallis said Cline stated she received twenty dollars from Cash App from an unidentified individual for gas to deliver the narcotics. Vasquez and Cline said upon the completion of the delivery, they would receive a payment of 400 to 700 dollars via Cash App. Vasquez and Cline were shown a photograph of Inmate Ruppel and identified him as "TJ" and "Freak". Vasquez stated they were all friends from Menifee. Officer Hallis said Cline was willing to show all communications, money transactions and photographs from her cell phone.

On July 21, 2022, I instructed Officer Hallis and Officer Ross to return to the WVDC to conduct a follow up interview and take photographs of pertinent messages, calls, photographs and Cash App payments on Cline's cell phone with her consent. During the follow-up interview, Officer Hallis discovered the twenty dollar payment she received for gas to deliver the narcotics from the name Cedric Johnson with Cash App username, "$Isafamily." According to SOMS Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156. Utilizing SOMS, ISU discovered Inmate Johnson's wife was named ▨▨▨▨ Dunn. Officer Hallis presented Cline a photograph and she stated, "That's Erika, that's who I met with at 7-Eleven."

On Thursday, July 21, 2022 the CIM ISU convened to review and assess all information and evidence gathered during this investigation. Based on the amount of information attained from interviewing civilians Vasquez and Cline, text message communications, photographs, Cash App payments and Cline's call history the CIM ISU determined there was sufficient evidence to show Inmates Ruppel and Johnson conspired with civilians Vasquez, Cline and Dunn to introduce controlled substances into CIM for distribution.

I instructed Officer Hallis and Officer Ross to proceed to CIM Facility D, Housing Unit D12, and locate Inmate Johnson. They escorted Inmate Johnson to Facility D, South Medical Clinic for a Medical Report of Injury or Unusual Occurrence (CDCR 7219). Upon arrival to the Medical Clinic, Officer Ross conducted an unclothed body search of Inmate Johnson which yielded negative results for contraband. The CDCR 7219 was completed on Inmate Johnson by Licensed Vocational Nurse S. Rubalcalba which showed no injuries. Upon completion of the CDCR 7219, Officer Hallis and Officer Ross escorted Inmate Johnson to the Facility D Program Office. Inmate Johnson was read his Miranda Rights pursuant to the Miranda Decision, and elected to speak with staff. Inmate Johnson was ordered by Officer Hallis to provide a urine sample for urinalysis, to which he refused. Upon completion, Inmate Johnson was placed in holding cell #4 awaiting transport to Facility B Administration Segregation Unit placement

While Officers Hallis and Ross located Inmate Johnson, I instructed Officer J. Caropreso and Officer T. Billington to proceed to CIM Facility D, Housing Unit D12, and locate Inmate Ruppel. They escorted Inmate Ruppel to Facility D South Medical Clinic for a CDCR 7219. Upon arrival to the Medical Clinic, Officer Caropreso conducted an unclothed body search of Inmate Ruppel which yielded negative results for contraband. The CDCR 7219 was completed on Inmate Ruppel by Licensed Vocational Nurse S. Ackarman which showed no injuries. Upon completion of the CDCR 7219, Officer Caropreso and Officer Billington escorted Inmate Ruppel to the Facility D Program Office. Inmate Ruppel was read his Miranda Rights pursuant to the Miranda Decision and elected to remain silent. Inmate Ruppel was ordered by Officer Hallis to provide a urine sample for urinalysis, to which he complied. Upon completion, Inmate Ruppel was placed in holding cell #1 awaiting transport to Facility B Administration Segregation Unit placement. I instructed Officer Hallis to process all evidence. All evidence was placed in evidence locker #88 located in the Facility B Sub-Evidence room. All photographs were uploaded to the Law Enforcement Photographic Archive Retrieval Device. I then instructed Officers Hallis, Ross, Billington and Caropreso to document their actions via Crime Incident Report. No staff were injured during this incident. This concludes my involvement with this incident.

R. Paredes

DATE: 07/27/2022

STAFF SIGNATURE

BADGE #: 59490

PERNR: 32284

NARRATIVE REVIEWED: Yes

REVIEWED BY STAFF: Tristan, D▨▨▨▨▨

REVIEWED DATE: 07/27/2022

REVIEWED TIME: 13:09:02

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

PAGE: 15
PROCESSED: 08/16/2022 19:01
REQUESTOR:

### STAFF NARRATIVE

**STAFF NAME:** Caropreso, J◼◼◼◼◼◼◼◼
**CREATED DATE:** 07/22/2022

**NARRATIVE TYPE:** Initial Report
**CREATED TIME:** 17:17:45

#### NARRATIVE

On July 20, 2022, the California Institution for Men (CIM) Investigative Services Unit (ISU) initiated an investigation regarding a conspiracy to introduce controlled substances onto Facility D for distribution. During the investigation, ISU identified Inmate Ruppel, T. CDCR# BP2012, as a participant in this conspiracy.

On July 21, 2022, at approximately 1400 hours, while conducting my duties as ISU Officer #7, ISU Sergeant (Sgt.) R. Paredes instructed Officer T. Billington and I to locate Inmate Ruppel on Facility D and to have Medical Report of Injury or Unusual Occurrence (CDCR 7219) completed. Officer Billington and I proceeded to Facility D, Magnolia Hall (D12) and located Inmate Ruppel at his bunk D12-168L. I ordered Inmate Ruppel to stand, turn around and place his hands behind his back and he complied. Inmate Ruppel was placed in handcuffs and I conducted a clothed body search while Officer Billington provided coverage. No contraband was discovered during the search.

Officer Billington and I then escorted Inmate Ruppel to the South Clinic. After entering the South Clinic, I conducted an unclothed body search on Inmate Ruppel while Officer Billington provided coverage. This search was also negative for contraband. Following the search, Licensed Vocational Nurse (LVN) S. Ackarman completed a CDCR 7219 on Inmate Ruppel noting no injuries. Officer Billington and I then escorted Inmate Ruppel to the Program Office. Prior to placing Inmate Ruppel into temporary holding cell #1, ISU Officer R. Ross conducted a search which was negative for contraband. Inmate Ruppel was then secured in the holding cell pending transfer to the Administrative Segregation Unit.

This concluded my involvement in this incident.

J. Caropreso
STAFF SIGNATURE

**DATE:** 07/22/2022

**BADGE #:** 69031

**PERNR:** 40007

**NARRATIVE REVIEWED:** Yes
**REVIEWED DATE:** 07/24/2022

**REVIEWED BY STAFF:** Tristan, D◼◼◼◼◼◼◼◼
**REVIEWED TIME:** 13:02:16

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:** 16
**PROCESSED:** 08/16/2022 19:01
**REQUESTOR:** ~~⬛⬛⬛⬛⬛~~

## STAFF NARRATIVE

**STAFF NAME:** Billington, T⬛⬛⬛⬛⬛⬛
**CREATED DATE:** 07/26/2022

**NARRATIVE TYPE:** Initial Report
**CREATED TIME:** 09:36:09

### NARRATIVE

On July 20, 2022, the California Institution for Men (CIM) Investigative Services Unit (ISU) initiated an investigation concerning a conspiracy to introduce controlled substances into CIM for distribution. During the investigation, ISU identified Inmate Ruppel, T. CDCR# BP2012, as a participant in this conspiracy.

On July 21, 2022, at approximately 1400 hours, while conducting my duties as ISU Officer #2, ISU Sergeant (Sgt.) R. Paredes instructed ISU Officer J. Caropreso and I to locate Inmate Ruppel on Facility D and escort him medical for completion of a Medical Report of Injury or Unusual Occurrence (CDCR 7219). Officer Caropreso and I proceeded to Facility D, Magnolia Hall (D12) and located Inmate Ruppel at his bunk D12-168L. Officer Caropreso ordered Inmate Ruppel to stand up, turn around and place his hands behind his back which he did. Officer Caropreso placed Inmate Ruppel in handcuffs and I while provided coverage, conducted a clothed body search which was negative for contraband.

Officer Caropreso and I then escorted Inmate Ruppel to the South Clinic. Upon entering the South Clinic, I provided coverage while Officer Caropreso conducted an unclothed body search on Inmate Ruppel. This search was also negative for contraband. Licensed Vocational Nurse (LVN) S. Ackarman then completed a CDCR 7219 on Inmate Ruppel noting no injuries. Officer Caropreso and I escorted Inmate Ruppel to the Facility D Program Office. ISU Officer R. Ross inspected holding cell #1 to ensure there was no contraband. Once it was clear, Inmate Ruppel was secured in the holding cell pending transfer to the Administrative Segregation Unit.
This concluded my involvement in this incident.

T. Billington

STAFF SIGNATURE

**DATE:** 07/26/2022

**BADGE #:** 82088

**PERNR:** 80138

**NARRATIVE REVIEWED:** Yes
**REVIEWED DATE:** 07/27/2022

**REVIEWED BY STAFF:** Paredes, R⬛⬛⬛⬛⬛⬛
**REVIEWED TIME:** 12:51:53

| CDCR | **INCIDENT REPORT PACKAGE** | **PAGE:** 17 |
|---|---|---|
| **REPORT NO. IRTR161 - 12** | | **PROCESSED:** 08/16/2022 19:01 |
| | **INCIDENT LOG NUMBER: 000000000042258** | **REQUESTOR:** ▓▓▓▓▓▓▓▓ |

### STAFF NARRATIVE

| **STAFF NAME:** Ross, R▓▓▓▓▓▓▓ | **NARRATIVE TYPE:** Initial Report |
|---|---|
| **CREATED DATE:** 07/26/2022 | **CREATED TIME:** 16:21:31 |

### NARRATIVE

On the morning of July 20, 2022, the California Institution for Men (CIM) Investigative Services Unit (ISU), was contacted by the San Bernardino County Sheriff's Department (SBSD) and informed that two civilians, ▓▓▓▓▓Cline and ▓▓▓▓ Vasquez were arrested near the institution for being in possession of controlled substances. Vasquez and Cline were found in possession of several bindles of methamphetamine and heroin.

During their interview, SBSD learned Vasquez and Cline were planning on dropping the narcotics off at CIM. Based on the information provided by the SBSD, ISU initiated an investigation into Vasquez's and Cline's involvement in a conspiracy to introduce controlled substances into CIM.

On July 20, 2022, while conducting my duties as ISU Officer #3, ISU Sergeant (Sgt.) R. Paredes informed me and ISU Officer S. Hallis of the information provided by the SBSD. Sgt. Paredes instructed Officer Hallis and I to report to the SBSD West Valley Detention Center (WVDC) to interview Vasquez and Cline. Upon arriving to WVDC, Officer Hallis and I interviewed ▓▓▓▓ Vasquez, California Driver's License Number (CDL#) ▓▓▓▓▓▓. The following is a summary of the information provided by Vasquez.

Officer Hallis and I introduced ourselves to Vasquez. Vasquez was informed the purpose of the interview and the knowledge ISU received of the case. During the interview Vasquez clarified that he and Cline received a call from TJ (CIM ISU Identified TJ as Inmate Ruppel, Thomas, California Department of Corrections and Rehabilitation number (CDCR#) BP2012, Facility D, Magnolia Hall (D12) bunk 168 L.) Vasquez said TJ wanted him and Cline to meet up with a couple at a 7-Eleven convenience store off of Temecula Parkway and the Interstate 15 (I-15) in the City of Temecula to pick up narcotics. Vasquez described the couple as a black male and female who were waiting in a gray, two door, Ford Explorer. After meeting the couple at 7-Eleven, Vasquez and Cline received narcotics and were instructed to drop the narcotics off at CIM and place it next to a sign located on the corner of Central Avenue in the city of Chino. Vasquez said upon the completion of the delivery, he and Cline would receive payment of 400 to 700 dollars via Cash App. During the interview with Vasquez, Officer Hallis showed Vasquez a photograph line up of the four inmates assigned to the CIM out-grounds crew. Vasquez positively identified Inmate Ruppel and explained they were friends from Menifee. This concluded the interview with Vasquez.

Following the interview of Vasquez, Officer Hallis and I interviewed ▓▓▓▓▓▓Cline, CDL# ▓▓▓▓▓▓. The following is a summary of the information provided by Cline:

Officer Hallis and I introduced ourselves to Cline. Cline was informed the purpose of the interview and the knowledge ISU received from the SBSD. Cline stated she and Vasquez met with a couple at a 7-Eleven in Temecula, CA around 1130pm-1200am on July 19, 2022. The couple was described an older black male and female. Cline said when they arrived at 7-Eleven, she talked to the black female while the black male went over to the vehicle to place the narcotics inside. The female made sure Cline understood they need to toss the bag of narcotics behind the white CIM sign. Cline did not know the males name but stated the females name was Erika.

Cline was shown a picture of Inmate Ruppel and recognized him, referring to Ruppel as "Freak". Cline explained, Inmate Ruppel stated he had an opportunity for her to make approximately 500 dollars through Cash App. Cline stated she received twenty dollars from Cash App from an unidentified individual for gas to deliver the narcotics. Cline stated that she is willing to show all communications, money transactions and photos from her cell phone. This concluded the interview.

On July 21, 2022, Officer Hallis and I returned to the WVDC to conduct a follow up interview and take photographs of all pertinent information on Cline's cell phone with her consent. Cline consented to allowing Officer Hallis and I to view all text messages, photographs, Cash App payments and her call history. Cline was given her phone at which time she unlocked it. Cline navigated through her phone allowing Officer Hallis to photograph pertinent messages, calls, photographs and Cash App payments. While taking photographs of Cline's Cash App account, Officer Hallis discovered the twenty dollar payment she received for gas to deliver the narcotics from the name Cedric Johnson with Cash App username, "$Isafamily." According to SOMS Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156. On February 12, 2020, a confidential memorandum was authored by Correctional Officer T. Billington, which identified Inmate Johnson as having the moniker "Isa".

Utilizing SOMS, ISU discovered Inmate Johnson's wife was named ▓▓▓▓ Dunn. Officer Hallis presented Cline a photograph and she stated, "That's ▓▓▓ that's who I met with at 7-Eleven." Officer Hallis then presented Cline a photograph of Inmate Johnson photo. Officer Hallis asked Cline if she recognized him and she explained, she had Johnson in the background during a FaceTime call with Inmate Ruppel. Officer Hallis asked Cline if she had any further information to provide and she explained she gave us all the information she had. This concluded the interview with Cline

At approximately 0933 hours, Cline received a call from an inmate at the California Institution for Men. The automated message stated the call was from Thomas Ruppel. Cline was allowed to answer the call. (For a detail description of the phone call between Cline and Inmate Ruppel refer to Officer Hallis' report.)

On July 21, 2022, at approximately 1400 hours, Sgt. Paredes instructed Officer Hallis and I to locate Inmate Johnson on Facility D and to have a Medical Report

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

**PAGE:**   18
**PROCESSED:** 08/16/2022  19:01
**REQUESTOR:**

### STAFF NARRATIVE

of Injury or Unusual Occurrence (CDCR 7219) completed. Officer Hallis and I proceeded to Facility D, Magnolia Hall (D12) and located Inmate Johnson at his assigned bunk, D12-194 L. I ordered Inmate Johnson to turn around and place his hands behind his back and he complied. Inmate Johnson was placed in handcuffs and I conducted a clothed body search while Officer Hallis provided coverage. No contraband was discovered during the search.

Officer Hallis and I escorted Inmate Johnson to the Facility D South Clinic. Upon entering the South Clinic, Officer Hallis conducted an unclothed body search of Inmate Johnson while I provided coverage. This search was also negative for contraband. Following the search, Licensed Vocational Nurse (LVN) S. Rubalcaba completed a CDCR 7219 on Inmate Johnson noting no injuries. Officer Hallis and I then escorted Inmate Johnson to the Facility D Program Office. Inmate Johnson was read his Miranda Rights pursuant to the Miranda Decision and indicated he was willing to make a statement. Officer Hallis ordered Inmate Johnson to provide a urine sample for urinalysis to which he refused. Prior to placing Inmate Johnson into holding cell #4, I conducted a search which was negative for contraband.  Inmate Johnson was then secured in the holding cell #4 pending transfer to the Administrative Segregation Unit.

After placing Inmate Johnson in holding cell #4, ISU Sgt. Paredes instructed me to conduct a search on holding cell #1, which was negative for contraband. Prior to securing Inmate Ruppel, in holding cell #1, Officer Hallis read Inmate Ruppel his Miranda Rights pursuant to the Miranda Decision, however he elected not to make a statement.  Officer Hallis ordered Inmate Ruppel to provide a urine sample for urinalysis to which he complied. Inmate Ruppel was placed holding cell #1 pending transfer to the Administrative Segregation Unit.

This concludes my involvement in this incident.

R. Ross

STAFF SIGNATURE

**DATE:** 07/26/2022

**BADGE #:** 73955

**PERNR:** 36994

**NARRATIVE REVIEWED:** Yes
**REVIEWED DATE:** 07/27/2022

**REVIEWED BY STAFF:** Paredes, R
**REVIEWED TIME:** 12:52:07

CDCR
REPORT NO. IRTR161 - 12

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000042258**

PAGE: 19
PROCESSED: 08/16/2022 19:01
REQUESTOR: ████████████

### STAFF NARRATIVE

**STAFF NAME:** Hallis, S███████████          **NARRATIVE TYPE:** Initial Report
**CREATED DATE:** 07/26/2022                  **CREATED TIME:** 13:37:58

#### NARRATIVE

On the morning of July 20, 2022, the California Institution for Men (CIM) Investigative Services Unit (ISU), was contacted by the San Bernardino County Sheriff's Department (SBSD) and informed that two civilians, Rebecca Cline and Kevin Vasquez were arrested near the institution for being in possession of controlled substances. Vasquez and Cline were found in possession of several bindles of methamphetamines and heroin. During their interview, SBSD learned Vasquez and Cline were planning on dropping the narcotics off at CIM. Based on the information provided by the SBSD, ISU initiated an investigation to Vasquez's and Cline's involvement in a conspiracy to introduce controlled substances into CIM.

On July 20, 2022, while conducting my duties as ISU Officer #1, ISU Sergeant (Sgt.) R. Paredes informed me of the information provided by the SBSD. Sgt. Paredes instructed ISU Officer R. Ross and I to go to the SBSD West Valley Detention Center (WVDC) to interview Vasquez and Cline. Upon arriving to WVDC, Officer Ross and I interviewed Kevin Vasquez, California Driver's License Number (CDL#) ████████. The following is a summary of the information provided by Vasquez during this interview:

Vasquez explained he and Cline received a phone call from a friend who he knew as "TJ", incarcerated at CIM. During the call TJ told Vasquez and Cline to meet with a couple at a 7-Eleven convenience store near Temecula Parkway and the Interstate 15 (I-15) in the City of Temecula to pick up narcotics. Vasquez stated he and Cline arrived at 7-Eleven at approximately 2330 to 0000 hours, and met with the couple. Vasquez described the couple as a black male and female who were waiting in a gray, two door, Ford Explorer. Vasquez entered 7-Eleven and the male got into Cline's vehicle placing the narcotics into the center console.

Vasquez and Cline were instructed to transport the narcotics to CIM and place it next to a sign located near the corner of Central Avenue and the entrance of CIM. Once the delivery was made, Vasquez and Cline would receive a payment of 400 to 700 dollars via Cash App. Vasquez explained all communications with TJ and the couple they met with was done over the phone. Vasquez was shown a photograph line up of the four inmates assigned to the CIM out-grounds crew and positively identified "TJ" as Inmate Ruppel, Thomas, California Department of Corrections and Rehabilitation number (CDCR#) BP2012. Vasquez explained he and Inmate Ruppel were friends from Menifee. This concluded the interview with Vasquez.

Following the interview of Vasquez, Officer Ross and I interviewed ████████ Cline, CDL# ████████ The following is a summary of the information provided by Cline:

Cline explained that on July 19, 2022, at approximately 2330 to 0000 hours, she and Vasquez met up with a couple at the 7-Eleven in Temecula, CA. Cline described the couple as an older black male and female. Cline also stated the couple was waiting a gray Ford Explorer. When they arrived Cline went to talk with the female and the male went into Cline's vehicle and placed the narcotics inside. The female asked Cline to explain the details of the delivery at CIM. Cline explained, they were to pull in the driveway of CIM and there would be a white sign on the right hand side. Once at the sign they were to toss the bag with the narcotics out the window next to the sign and after make a U-turn and leave. Cline did not know the males name but stated the females was Erika. Cline was shown a picture of Inmate Ruppel and she stated, "That's Freak." Cline was asked to explain Inmate Ruppel's involvement and stated Ruppel had an opportunity for her to make approximately 500 dollars through Cash App. Cline explained she received twenty dollars in gas money via Cash App from an unidentified individual to deliver the narcotics. Cline also stated she was willing to show all communication, money transactions and photos from her cell phone. This concluded the interview with Cline.

On July 21, 2022, Officer Ross and I returned to the WVDC to conduct a follow up interview and take photographs of all pertinent information on Cline's cell phone with her consent. With the cooperation of the SBSD, Cline was allowed to have her cellular phone temporarily. Cline consented to allowing Officer Ross and I to view text message communications, photographs, Cash App payments and her call history. Cline unlocked her phone and navigated through each area allowing me to photograph pertinent information (Refer to the Attachment E for a detailed description of each photograph taken).

One of the text messages Cline received from Inmate Ruppel included a photograph of the location where the narcotics were to be dropped. Cline also had a text conversation discussing plans to drop the narcotics and inquiring if the drop has been completed.

Additionally, there were pictures of money transactions to and from Inmate Ruppel's Cash App account (username $Freaknasty). While taking photographs of Cline's Cash App account, I discovered the twenty dollar payment she indicate she receive for gas to deliver the narcotics. The payment was from the name Cedric Johnson with Cash App username, "$Isafamily." According to SOMS Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156. On February 12, 2020, a confidential memorandum was authored by Correctional Officer T. Billington, which identified Inmate Johnson as having the moniker "Isa".

A records check was conducted of Inmate Johnson's "Relatives and Associates" section in SOMS which listed Erika Dunn as his wife ████████ Dunn's photograph was shown to Cline and she stated, "That's ████ that's who I met with at 7-Eleven." Cline was a shown Inmate Johnson's photograph and stated she had seen him in the background when she FaceTime's Inmate Ruppel. Cline was asked if she had any further information to provide and she explained she gave us all the information she has. This concluded the interview with Cline.

| CDCR | INCIDENT REPORT PACKAGE | PAGE: | 20 |
|---|---|---|---|
| REPORT NO. IRTR161 - 12 | | PROCESSED: | 08/16/2022  19:01 |
| | INCIDENT LOG NUMBER: 000000000042258 | REQUESTOR: | |

## STAFF NARRATIVE

At approximately 0933 hours, Cline received a call from an inmate at the California Institution for Men. The automated message stated the call was from Thomas Ruppel.  Cline was allowed to answer the call and the following conversation was had:

Ruppel: Hello

Cline: Hey what's up?

Ruppel: Oh my god what hap okay, well, be careful, but are you good?

Cline: Yeah, I'm good, I'm good. I just had a bump in the road. My cars having problems.

Ruppel: Okay. Well, you still have it right?

Cline: Yeah I got it still, I was gonna drop it today.

Ruppel: Okay, so no, no, no, hold on. Don't, don't, don't, just look.  I'm gonna have, I'm gonna have the person call you and just pick it back up, okay?

Cline: Pick it back up, okay.

Ruppel: Okay, I got your word? Becca just be honest with me right now if anything so I can, so I can say what's going on. Are we good, do you still have it?

Cline: Yeah, I still have it, I'm good. I still have it, I was just having car problems so I didn't drop it sooner.

Ruppel: I fucking love you dude. I fucking love, that's exactly what I said too.  So look, I'm gonna have, I'm gonna have homeboy call you. Look, just keep your phone on. I'm gonna call you back shortly okay?

Cline: Alright

Ruppel: I fucking love you ████. Fuck, the whole time I've been saying, you don't understand, no, no, no, no.  Okay, perfect. I love you, I'm gonna talk to you very shortly, okay?

Cline: I love you too man.

Ruppel: Alright bye.

Cline: Bye

End of call.

At approximately 1000 hours, Cline received a second call from Inmate Ruppel utilizing a contraband cell phone.  Cline was allowed to answer the call and the following conversation was had:

Ruppel: Hello.

Cline: Hello.

Ruppel: Hey what's up?

Cline: Hey um, um, when did you want me to meet back up? Cause I'm out here in Chino still, cause my car broke down.

Ruppel: Your car broke down, fuckin eh. Ok well, let me, let me figure it out. Cause I gotta, I gotta to talk to the dude, fuckin eh.  Cause what happen is ah, cause there hitting me with ah, remember what I did to Larry?  They're hitting me with an assault of a deadly weapon charge.

Cline: Oh shit.

Ruppel: So I have a detainer but they might be taking me, taking my gate pass, um, if you can give me maybe about an hour or so, I'll try and call you back and will try and figure this out.

Cline: Ok yeah that's fine.

Ruppel: A ████ I fuckin, I love you. I hope you know that man. This whole time I was like, you don't understand she wouldn't do that.  She wouldn't fuckin do that like, that this girl has my fuckin back, fuckin tough.  Something happened, something had to of happened so.

Cline: No just my car broke down.  That was my only thing, but I have a tow truck, that's why I was waiting to like, see what you want me to do.  I didn't want it to order it to come help me, then you know then.

Ruppel: No, no, no, no, you get, get home, don't worry I'll have somebody come to you, don't, don't even trip on that ok.

Cline: Are you sure?

Ruppel: Yeah I'm positive, don't worry about it, I'll have somebody come to you ok.

Cline: But you'll call me in an hour?

Ruppel: I should call you in an hour yeah.

Cline: Within an hour ok.

Ruppel: All right, all right, I love you.

Cline: Love you to man.

Ruppel: Bye.

Cline: Bye.

End of call.

After returning to CIM, I briefed Sgt. Paredes of the information and evidence obtained during the interview.  At approximately 1400 hours, it was determined there was sufficient evidence demonstrating Inmates Ruppel and Johnson conspired with civilians Vasquez, Cline and Dunn to introduce controlled substances into CIM for distribution.

Sgt. Paredes instructed Officer Ross and I to locate Inmate Johnson on Facility D and to have Medical Report of Injury or Unusual Occurrence (CDCR 7219) completed. Officer Ross and I proceeded to Facility D, Magnolia Hall (D12) and located Inmate Johnson at his bunk D12-194L. Officer Ross ordered Inmate Johnson to turn around and place his hands behind his back and he complied. Inmate Johnson was placed in handcuffs and Officer Ross conducted a clothed body search which yielded negative results for contraband while I provided coverage.

**CDCR**                          **INCIDENT REPORT PACKAGE**          **PAGE:**   21
**REPORT NO. IRTR161 - 12**                                           **PROCESSED:** 08/16/2022 19:01
                        **INCIDENT LOG NUMBER: 000000000042258**       **REQUESTOR:** ▇▇▇▇

## STAFF NARRATIVE

Officer Ross and I escorted Inmate Johnson to the Facility D South Clinic. Upon entering the South Clinic, I conducted an unclothed body search of Inmate Johnson which yielded negative results for contraband while Officer Ross provided coverage. Following the search, Licensed Vocational Nurse (LVN) S. Rubalcaba completed a CDCR 7219 on Inmate Johnson noting no injuries. Officer Ross and I escorted Inmate Johnson to the Facility D Program Office. Inmate Johnson was read his Miranda Rights pursuant to the Miranda Decision, to which he stated he understood and was willing to make a statement. Upon completion, I ordered Inmate Johnson to provide a urine sample for urinalysis to which he refused. Prior to placing Inmate Johnson into holding cell #4, Officer Ross conducted a search which yielded negative results for contraband. Inmate Johnson was then secured in the holding cell #4 pending transfer to the Administrative Segregation Unit. Upon completion, I reported to holding cell #1 and read Inmate Ruppel his Miranda Rights which he stated he understood and elected to exercise his rights and refused to make a statement. I ordered Inmate Ruppel to provide a urine sample for urinalysis to which he complied.

I returned to ISU Building #2 and began processing the audio evidence recorded. I took a total of one photograph of the three audio recorded DVDs with an identifying placard (Refer to the Attachment E for a detailed description of each photograph taken). Upon completion, I placed the three audio recorded DVDs in an evidence envelope with appropriate identifying information and sealed the envelope with evidence tape.  I secured the three audio recorded DVDs in Sub-Evidence locker #88 in the Sub-Evidence Room.  I uploaded 32 photographs into the Law Enforcement Photographic Archival Device.

S. Hallis                                          **DATE:** 07/26/2022
STAFF SIGNATURE

              **BADGE #:** 83732                   **PERNR:** 89577

        **NARRATIVE REVIEWED:** Yes          **REVIEWED BY STAFF:** Paredes, R▇▇▇▇
            **REVIEWED DATE:** 07/27/2022        **REVIEWED TIME:** 12:52:25

---

        **STAFF NAME:** Hallis, S▇▇▇▇            **NARRATIVE TYPE:** Supplemental Report
        **CREATED DATE:** 08/10/2022             **CREATED TIME:** 14:39:42

## NARRATIVE

Question:
In your report you indicate Cline stated on July 19, 2022, at around 2330-0000 hours, she met with a couple at the 7-Eleven in Temecula, CA.  However, the Crime Report provided by the San Bernardino County Sheriff's Department demonstrates Cline and Vasquez were arrested on July 19, 2022, at 0234 hours.

Response:
During the interview, Cline stated she and Vasquez met with the couple at the 7-Eleven in Temecula, CA the day prior to being arrested.  This verifies the date the meeting occurred was July 18, 2022.

S. Hallis                                          **DATE:** 08/10/2022
STAFF SIGNATURE

              **BADGE #:** 83732                   **PERNR:** 89577

        **NARRATIVE REVIEWED:** Yes          **REVIEWED BY STAFF:** Tristan, D▇▇▇▇
            **REVIEWED DATE:** 08/10/2022        **REVIEWED TIME:** 15:12:46



# CRIME SCENE PHOTO EVIDENCE LOG
## ATTACHMENT E

**DATE
OF INCIDENT:** 07/21/2022          **INCIDENT LOG #:** 42258          West Valley Detention
**LOCATION:** Center

**DATE PHOTO LOG INITIATED:**   07/21/2022

**TYPE OF INCIDENT:** Conspiracy to Introduce Controlled
Substance for distribution          **VIOLATION #:** 3016 (C)

**NAME AND CDCR# OF SUSPECT(S)/VICTIM(V):** Ruppel,T CDCR# BP2012, Johnson.C CDCR# G03156

**TYPE OF CAMERA:** CANON Digital Camera          **NUMBER OF PHOTOS:** (32)

| | |
|---|---|
| FRAME # 01 | Close up image of Cline's phone with a picture of the location where the narcotics were to be dropped. |
| FRAME # 02 | Close up image of Cline's phone with a picture of the drop location and a text inquiring if the drop has been made. |
| FRAME # 03 | Close up image of Cline's phone with a text from Inmate Ruppel. |
| FRAME # 04 | Close up image of Cline's phone with a text from Inmate Ruppel. |
| FRAME # 05 | Close up image of Cline's phone text message log. |
| FRAME # 06 | Close up image of Cline's phone with her Cash App account photo and text message. |
| FRAME # 07 | Close up image of Cline's phone with a text message. |
| FRAME # 08 | Close up image of Cline's phone with a text message. |
| FRAME # 09 | Close up image of Cline's phone with activity log. |
| FRAME # 10 | Close up image of Cline's phone with activity log. |
| FRAME # 11 | Close up image of Cline's phone which indicates Cline received twenty dollars from Inmate Cedric Johnson. |
| FRAME # 12 | Close up image of Cline's phone which indicates Cline received twenty dollars from Inmate Cedric Johnson. |
| FRAME # 13 | Close up image of Cline's phone with Inmate Ruppel's Cash App account information. |
| FRAME # 14 | Second photograph of Cline's phone with Inmate Ruppel's Cash App account information. |
| FRAME # 15 | Third photograph of Cline's phone with Inmate Ruppel's Cash App account information. |
| FRAME # 16 | Close up image of Cline's phone receiving a phone call from Chino state Prison. |
| FRAME # 17 | Close up Image of Cline's phone with text message. |
| FRAME # 18 | Close up image of Cline's phone with text message. |
| FRAME # 19 | Close up image of Cline's phone with a missed call from Richard Johnson. |
| FRAME # 20 | Close up image of Cline's phone with a photograph of Inmate Ruppel. |
| FRAME # 21 | Close up image of Cline's phone with a photograph of Inmate Ruppel and another inmate housed at CIM. |
| FRAME # 22 | Second close up image of Cline's phone with a photograph of Inmate Ruppel and another inmate housed at CIM. |
| FRAME # 23 | Close up image of Cline's phone with a text message from Inmate Ruppel. |
| FRAME # 24 | Second close up image of Cline's phone with a text message from Inmate Ruppel. |
| FRAME # 25 | Close up image of Cline's phone with a text message from Inmate Ruppel. |
| FRAME # 26 | Close up image of Cline's phone with a text message from Inmate Ruppel. |
| FRAME # 27 | Close up image of Cline's phone with a text message from Inmate Ruppel. |
| FRAME # 28 | Close up image of Cline's phone with a text message from Inmate Ruppel. |
| FRAME # 29 | Close up image of Cline's phone with a text message from Inmate Ruppel. |
| FRAME # 30 | Close up image of Cline identifying Erika Dunn as the Female she received the narcotics from at the 7-Eleven. |
| FRAME # 31 | Close up image of Erika Dunn. |
| FRAME # 32 | Close up image of the three audio recorded DVD's with Evidence placard. |

Officer S. Hallis                         N/A
(Name of Photographer – Printed)          (Name of Scribe – Printed)

(Signature)                               N/A
                                          (Signature)



IMAGE #1



IMAGE #2



IMAGE #3



IMAGE #4



IMAGE #5



IMAGE #6



IMAGE #7



IMAGE #8



IMAGE #9



IMAGE #10



IMAGE #11



IMAGE #12



IMAGE #13



IMAGE #14



IMAGE #15



IMAGE #16

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**
CDCR 7219 (Rev. 01/18)
Page 1 of 2

| NAME OF INSTITUTION C.I.M | LOCATION OF EVALUATION D Yard / South Clinic | | DATE 7-21-22 |
|---|---|---|---|

REASON FOR REPORT   ☐ ALLEGATION   ☐ ON THE JOB INJURY   ☐ USE OF FORCE   ☐ INJURY   ☐ OTM RETURNS
☑ UNUSUAL OCCURRENCE   ☐ PRE AD/SEG ADMISSION   ☐ R&R   ☐ OTHER _____

| NAME LAST Ruppel, FIRST Thomas | CDCR NUMBER BP2012 | PERNR / INST. ID # 91433 | VISITOR ID # (SOMS) |
|---|---|---|---|
| PLACE OF OCCURRENCE D12 Magnolia | DATE OF OCCURRENCE 7-21-22 | TIME OF OCCURRENCE 15:24 | TIME SEEN 15:30 | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

| INJURIES FOUND | YES / NO | |
|---|---|---|
| Abrasion/Scratch | | 1 |
| Active Bleeding | | 2 |
| Broken Bone | | 3 |
| Bruise/Discolored Area | | 4 |
| Burn | | 5 |
| Dislocation | | 6 |
| Dried Blood | | 7 |
| Fresh Tattoo | | 8 |
| Cut/Laceration/Slash | | 9 |
| Swollen Area | | 10 |
| Pain | | 11 |
| Protrusion | | 12 |
| Puncture | | 13 |
| Reddened Area | | 14 |
| Skin Flap | | 15 |
| Pre-Existing | | 16 |
| Other | | 17 |
| | | 18 |

| Chemical Agent Exposure? | YES / NO |
|---|---|
| Chem. Agent Exposure Area | EX |
| Decontaminated w/ Water? YES / NO / REFUSED | |
| Decontaminated w/ Air? YES / NO / REFUSED | |
| Self-decontamination Instructions given ? YES / NO | |
| Staff issued Exposure packet ? YES / NO | |

Q 15 min. check times

| Initial | 1st Check |
|---|---|
| 3rd Check | Final |

TIME/DISPOSITION 15:33 w/ Custody

Right   Left

Front   Back

REPORT COMPLETED BY/TITLE (PRINT AND SIGN) Sarah Ackerman
PERNR / INST. ID # 91433
ID-12704857
RDO: Tu/Wed
ASSIGNMENT AREA Float all yards

STATE OF CALIFORNIA
**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**
CDCR 7219 (Rev. 01/16)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| NAME OF INSTITUTION | LOCATION OF EVALUATION | DATE |
|---|---|---|
| CIM | D yard south clinic | 7-21-22 |

REASON FOR REPORT ☐ ALLEGATION   ☐ ON THE JOB INJURY   ☐ USE OF FORCE ☐ INJURY   ☐ OTM RETURNS
☐ UNUSUAL OCCURRENCE   ☐ PRE AD/SEG ADMISSION   ☐ R&R   ☑ OTHER Unusual occurance

| NAME        LAST | FIRST | CDCR NUMBER | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|---|
| Johnson | Cedric | G031516 | | |

| PLACE OF OCCURRENCE | DATE OF OCCURRENCE | TIME OF OCCURRENCE | IMB SEEN | RN NOTIFIED TIME | PHYSICIAN NOTIFIED TIME |
|---|---|---|---|---|---|
| D yard south clinic | 7-21-22 | 3:24 pm | 3:24 pm | — | — |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

Transfer

| INJURIES FOUND?   YES / NO | | |
|---|---|---|
| Abrasion/Scratch | | |
| Active Bleeding | 2 | |
| Broken Bone | 3 | |
| Bruise/Discolored Area | 4 | |
| Burn | 5 | |
| Dislocation | 6 | |
| Dried Blood | 7 | |
| Fresh Tattoo | 8 | |
| Cut/Laceration/Slash | 9 | |
| Swollen Area | 10 | |
| Pain | 11 | |
| Petechiae | 12 | |
| Puncture | 13 | |
| Reddened Area | 14 | |
| Skin Flap | 15 | |
| Pre-Existing | 16 | |
| Other | 17 | |
| | 18 | |

Chemical Agent
Exposure?   YES / NO

Chem. Agent
Exposure Area   EX

Decontaminated w/ Water?
YES / NO / REFUSED

Decontaminated w/ Air?
YES /NO / REFUSED

Self-decontamination
Instruction given?   YES / NO

Staff Issued
Exposure packet ?   YES / NO

Q 15 min. check times

| Initial | 1st Check |
|---|---|
| 2nd Check | Final |



Right   Left   Front   Back

TIME/DISPOSITION
Returned to coustody

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | PERNR / INST. ID # | RDO: | ASSIGNMENT AREA |
|---|---|---|---|
| Stephanie Rubalcaba LVN   S R | 1310903 | sat /sun | float |

12709 629

# URINALYSIS INFORMATION REPORT

## CALIFORNIA INSTITUTION FOR MEN
## CHINO, CALIFORNIA

INMATE NAME: JOHNSON, CEDRIC          CDCR# G03156    BED# D12-194L

INMATE JOB ASSIGNMENT:    PIA Fac mantnac DATE: 7-21-22   TIME: _____

FACILITY: ☐ A   ☐ B   ☐ C   ☒ D    WATCH: ☐ 1ST   ☐ 2ND   ☒ 3RD

**REASON FOR TESTING:**

☐ Temporary Community Leave (TCL)     ☐ Temporary Community Leave Return (TCL)

☐ Entering Family Visit (FVS)     ☐ Exiting Family Visit (FVS)

☒ Probable Cause (PRB)

☐ Job or Program Requirement (JOB)     ☐ Substance Abuse Treatment (SAT)

☐ MANDATORY (list date:_____)  ☐ RANDOM (list date:_____)

Acronyms in () must be entered on each UA label next to reason when not testing for Mandatory or Random List

**TESTING OUTCOME:**

☐ TESTED          ☒ REFUSED

☐ NOT TESTED:_____

(Examples: out to court; out to medical; less than 90 days of incarceration; medically incapable; etc..... )

**TEST ADMINISTERED BY:** ___S. HALLIS___       ___S.E.___
(PRINT NAME AND PPAS)                    (SIGNATURE)

**CORRECTIONAL SERGEANT:** ___P. PAREDES___       _____
(PRINT NAME AND PPAS)                    (SIGNATURE)

Original: Main Gate
Cc: Facility

(Rev: 09/14)

## CALIFORNIA INSTITUTION FOR MEN

__7-21-22     1570__        _CONSPIRE TO DISTRIBUTE CONTROLLED SUBSTANCE_
   Date and Time                                   Offense

## MIRANDA RIGHTS

__INITIALS__

1. You have the right to remain silent. Do you understand that?

2. Anything you say can and will be used against you in a court of law. Do you understand that?

3. You have the right to consult an attorney and to have an attorney present with you during questioning now or in the future. Do you understand that?

4. If you cannot afford to hire an attorney, one will be appointed for you at no charge. Do you understand that?

## WAIVER

1. Do you understand each of these rights as I have explained them to you?

2. Now that I have explained your rights, are you willing to make a statement without an attorney present?

The foregoing was read and fully explained to: JOHNSON, CEDRIC  # G03156
(Print Full Name & ID of Person Questioned)

On: __7-21-22__  by: __S. Harris   # 83732__
   (Date)                (Print Name & Badge Number and Signature of Officer)

Witnessed by: __R. Rog__
(Print Name and Signature of Witness)

COMMENTS: _____

My rights were presented to me. I acknowledge and understand these rights clearly.

The above is true as stated: _Cedric Johns_ ## G03156
(Signature of Person Questioned)

Revised 11/2015



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# RULES VIOLATION REPORT

| CDC NUMBER G03156 | INMATE'S NAME JOHNSON, CEDRIC G. | EPRD 03/02/2039 | FACILITY CIM-Facility B | HOUSING LOCATION CIM-B - B PH 3 - 312001L |
|---|---|---|---|---|
| VIOLATION DATE 08/08/2022 | VIOLATION TIME 10:00:00 | VIOLATION LOCATION CIM-Central Service - CENTRAL SERVICES | | WITH STG NEXUS No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On Monday, August 8, 2022, the California Institution for Men (CIM) Investigative Services Unit (ISU) concluded an investigation regarding a conspiracy to introduce and distribute controlled substances, involving Inmate Ruppel, Thomas, California Department of Corrections and Rehabilitation number (CDCR#) BP2012 and Inmate Johnson, Cedric, CDCR # G03156. After reviewing all available information, the CIM ISU determined Inmates Ruppel and Johnson, conspired with civilians ▓▓▓▓ Vasquez, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Cline ▓▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓ Dunn ▓▓▓▓▓▓▓▓▓ to introduce and distribute controlled substances.

On July 20, 2022, CIM ISU received information from the San Bernardino County Sheriff's Department (SBSD) indicating civilians, ▓▓▓▓ Cline and ▓▓▓▓ Vasquez were arrested near the institution for being in possession of controlled substances. Vasquez and Cline were found in possession of several bindles of methamphetamines and heroin. SBSD reported Vasquez and Cline admitted they were planning on dropping the narcotics off at CIM. Based on this information, ISU initiated an investigation to Vasquez's and Cline's involvement in a conspiracy to introduce controlled substances into CIM.

On July 20, 2022, while conducting my duties as ISU Officer #1, ISU Officer R. Ross and I went to the SBSD West Valley Detention Center (WVDC) to interview Vasquez and Cline. While at the WVDC, Officer Ross and I interviewed civilian ▓▓▓▓ Vasquez. The following is a summary of the information provided by Vasquez during this interview:

Vasquez explained he and Cline received a phone call from a friend who he knew as "TJ", incarcerated at CIM. During the call TJ told Vasquez and Cline to meet with a couple at a 7-Eleven convenience store near Temecula Parkway and the Interstate 15 (I-15) in the City of Temecula to pick up narcotics. Vasquez stated he and Cline arrived at 7-Eleven at approximately 2330 to 0000 hours, and met with the couple. Vasquez described the couple as a black male and female who were waiting in a gray, two door, Ford Explorer. Vasquez entered 7-Eleven and the male got into Cline's vehicle, placing the narcotics into the center console.

Vasquez and Cline were instructed to transport the narcotics to CIM and place it next to a sign located near the corner of Central Avenue and the entrance of CIM. Once the delivery was made, Vasquez and Cline would receive a payment of 400 to 700 dollars via Cash App. Vasquez explained all communications with TJ and the couple they met with were conducted over the phone. Vasquez was shown a photograph line up of the four inmates assigned to the CIM Out-Grounds crew and positively identified "TJ" as Inmate Ruppel, T. CDCR# BP2012. Vasquez explained he and Inmate Ruppel were friends from Menifee.

Officer Ross and I then interviewed civilian, ▓▓▓▓▓▓ Cline. The following is a summary of the information provided by Cline:

Cline explained that on July 19, 2022, at approximately 2330 to 0000 hours, she and Vasquez met with a couple at the 7-Eleven in Temecula, CA. Cline described the couple as an older black male and female. Cline stated the couple was waiting a gray Ford Explorer. When they arrived, Cline went to talk with the female, while the male went into Cline's vehicle and placed the narcotics inside. The female asked Cline to explain the details of the delivery at CIM.

Cline explained, they were to pull in the driveway of CIM and there would be a white sign on the right hand side. Once at the sign, they were to toss the bag containing narcotics out the window next to the sign, then make a U-turn and leave. When asked the names of the couple, Cline did not know the males name but stated the females was ███████.

Cline was shown a picture of Inmate Ruppel and she stated, "That's Freak." Cline was asked to explain Inmate Ruppel's involvement and stated Ruppel told her she had an opportunity to make approximately 500 dollars through Cash App. Cline explained she received twenty dollars in gas money via Cash App from an unidentified individual to deliver the narcotics. Cline also stated she was willing to show all communication, money transactions and photos from her cell phone. This concluded the interview with Cline.

On July 21, 2022, Officer Ross and I returned to the WVDC to conduct a follow up interview with Cline. With Cline's consent, I was able to take photographs of all pertinent information on Cline's cell phone. With the cooperation of the SBSD, Cline was allowed to have her cellular phone temporarily. Cline consented to allowing Officer Ross and I to view text message communications, photographs, Cash App payments and her call history. Cline unlocked her phone and navigated through each area allowing me to photograph pertinent information (Refer to the Attachment E for a detailed description of each photograph taken).

One of the text messages Cline received from Inmate Ruppel included a photograph of the location where the narcotics were to be dropped. Frame #2 on the Photo Evidence Log showed and explained there was of a white sign with red lettering, which was located near the corner of Central Avenue and the entrance of CIM. (The CIM ISU identified the sign as a notice to the public that you are entering the California Institution for Men). Cline also had a text conversation discussing plans to drop the narcotics and inquiring if the drop has been completed. Frame #3 on the Photo Evidence Log, a text message conversation from Inmate Ruppel explained he was going to have someone from a 619 area code call Cline and that would be the person to give her the narcotics. In the same text conversation Inmate Ruppel explained Cline was to place the narcotics in a McDonald's bag and toss it out the window next to the white sign located near the corner of Central Avenue and the entrance of CIM. The last text message in the photograph, Inmate Ruppel stated, "████████are you making the drop. This is TJ I need to know what's up."

Additionally, frame #13,14 and 15 on the Photo Evidence Log, there were pictures of Inmate Ruppel's Cash App account (username ███████████, which Cline explained she would send and receive money from. While taking photographs of Cline's Cash App account, I discovered the twenty dollar payment she indicated she receive for gas to deliver the narcotics. The payment was from the name Cedric Johnson with Cash App username, ████████████ According to SOMS Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156. On February 12, 2020, a confidential memorandum was authored by Correctional Officer T. Billington, which identified Inmate Johnson as having the moniker ██████.

A records check was conducted of Inmate Johnson's "Relatives and Associates" section in SOMS which listed ███████ Dunn as his wife. ██████ Dunn's photograph was shown to Cline and she stated, "That's ████████ that's who I met with at 7-Eleven." Cline was a shown Inmate Johnson's photograph and stated she had seen him in the background when she FaceTime's Inmate Ruppel. Cline was asked if she had any further information to provide and she explained she gave us all the information she has. This concluded the interview with Cline.

At approximately 0933 hours, Cline received a call from an inmate at the California Institution for Men. The automated message stated the call was from Thomas Ruppel. Cline was allowed to answer the call and the following conversation was had:

Ruppel: Hello
Cline: Hey what's up?
Ruppel: Oh my god what hap okay, well, be careful, but are you good?
Cline: Yeah, I'm good, I'm good. I just had a bump in the road. My cars having problems.
Ruppel: Okay. Well, you still have it right?
Cline: Yeah I got it still, I was gonna drop it today.
Ruppel: Okay, so no, no, no, hold on. Don't, don't, don't, just look. I'm gonna have, I'm gonna have the person call you and just pick it back up, okay?
Cline: Pick it back up, okay.
Ruppel: Okay, I got your word? Becca just be honest with me right now if anything so I can, so I can say what's

going on. Are we good, do you still have it?
Cline: Yeah, I still have it, I'm good. I still have it, I was just having car problems so I didn't drop it sooner.
Ruppel: I fucking love you dude. I fucking love, that's exactly what I said too. So look, I'm gonna have, I'm gonna have homeboy call you. Look, just keep your phone on. I'm gonna call you back shortly okay?
Cline: Alright
Ruppel: I fucking love you ▓▓▓▓ Fuck, the whole time I've been saying, you don't understand, no, no, no, no. Okay, perfect. I love you, I'm gonna talk to you very shortly, okay?
Cline: I love you too man.
Ruppel: Alright bye.
Cline: Bye
End of call.

At approximately 1000 hours, Cline received a second call from Inmate Ruppel utilizing a contraband cell phone. Cline was allowed to answer the call and the following conversation was had:

Ruppel: Hello.
Cline: Hello.
Ruppel: Hey what's up?
Cline: Hey um, um, when did you want me to meet back up? Cause I'm out here in Chino still, cause my car broke down.
Ruppel: Your car broke down, fuckin eh. Ok well, let me, let me figure it out. Cause I gotta, I gotta talk to the dude, fuckin eh. Cause what happen is ah, cause there hitting me with ah, remember what I did to Larry? They're hitting me with an assault of a deadly weapon charge.
Cline: Oh shit.
Ruppel: So I have a detainer but they might be taking me, taking my gate pass, um, if you can give me maybe about an hour or so, I'll try and call you back and will try and figure this out.
Cline: Ok yeah that's fine.
Ruppel: A▓▓▓▓ I fuckin, I love you. I hope you know that man. This whole time I was like, you don't understand she wouldn't do that. She wouldn't fuckin do that like, that this girl has my fuckin back, fuckin tough. Something happened, something had to of happened so.
Cline: No just my car broke down. That was my only thing, but I have a tow truck, that's why I was waiting to like, see what you want me to do. I didn't want it to order it to come help me, then you know then.
Ruppel: No, no, no, no, you get, get home, don't worry I'll have somebody come to you, don't, don't even trip on that ok.
Cline: Are you sure?
Ruppel: Yeah I'm positive, don't worry about it, I'll have somebody come to you ok.
Cline: But you'll call me in an hour?
Ruppel: I should call you in an hour yeah.
Cline: Within an hour ok.
Ruppel: All right, all right, I love you.
Cline: Love you to man.
Ruppel: Bye.
Cline: Bye.
End of call.

Based on the information obtained from Cline and Vasquez, ISU determined there was sufficient information to place Inmates Ruppel and Johnson in the Administrative Segregation Unit (ASU) pending completion of this investigation. After returning to CIM, I briefed Sgt. Paredes of the information and evidence obtained during the interview.

Three audio recorded DVDs were secured into the CIM Sub-Evidence in locker #88. I uploaded 32 photographs into the Law Enforcement Photographic Archival Retrieval Device.

On August 8, 2022, I monitored a phone call placed by Inmate Johnson on July 19, 2022 at 0725hours, to the number ▓▓▓▓▓▓▓▓ It should be noted that phone call was placed on the morning the delivery of narcotics was intended to be dropped at CIM. Utilizing departmental resources, ISU confirmed this phone is registered to ▓▓▓▓ Dunn (Johnson's wife). The following is a portion of Inmate Johnson and Dunn's conversation.

Johnson: Did you talk to ▓▓▓▓ (referring to ▓▓▓▓ Cline)
Dunn: I didn't talk to her but yeah.
Johnson: She said it was good?
Dunn: Yeah
Johnson: Yeah baby?

Dunn: Yes
Unrelated conversation
Johnson: I told him, I told my wife call that woman and give her that money at seven something at night. You waited two hours later.
Dunn: I couldn't do it with my eyes closed baby
Johnson: No, you could've did before your eyes was closed.
Dunn: When I got the parking lot she was already standing there waiting.
Johnson: I know.
Unrelated conversation
Johnson: You should hit ▓▓▓▓ baby and make sure that was good.
Dunn: Okay
Johnson: And text ▓▓▓▓ and say yes.
Dunn: Okay

ISU determined Inmate Johnson was asking Dunn to confirm everything went as planned when communicating and delivering the narcotics to Cline. Inmate Johnson was also instructing Dunn to call Cline to make sure the drop was completed.

On August 8, 2022, at approximately 1000 hours, CIM ISU has concluded its investigation. CIM ISU has determined Inmate's Ruppel and Johnson were aware of the planned narcotics delivery from Cline, Vasquez and Dunn due to the information received from the SBCSD, the interviews with Cline and Vasquez being able to positively identify Inmate's Ruppel and Johnson as the inmates that were facilitating the narcotic delivery, the photograph evidence from Cline's cell phone, the multiple recorded phone calls from Inmate Ruppel to Cline inquiring if the narcotic delivery had been completed, the picture on Cline's phone which showed Inmate Johnson's twenty dollar Cash App account payment to Cline for gas money to make the delivery. CIM ISU has determined Inmate's Ruppel and Johnson were conspiring to introduce controlled substances for distribution.

This concludes my involvement in this is matter.

| REPORTING EMPLOYEE<br>S. Hallis | TITLE<br>Officer | ASSIGNMENT<br>ISU #1 | RDO<br>F/S | DATE:<br>08/11/2022 |
| --- | --- | --- | --- | --- |

RVR LOG NUMBER: 000000007210168        VIOLATED RULE NUMBER: 3016(d)

SPECIFIC ACT: Conspire - Distribution of a Controlled Substance

CLASSIFICATION

LEVEL: Serious                                OFFENSE DIVISION: Division A2

REFERRED TO: Senior Hearing Officer          FELONY PROSECUTION LIKELY: Yes

| REVIEWING SUPERVISOR<br>D. Tristan | TITLE<br>Lieutenant | DATE<br>08/11/2022 |
| --- | --- | --- |

| CLASSIFIED BY<br>D. Tristan | TITLE<br>Lieutenant | DATE<br>08/11/2022 |
| --- | --- | --- |

CDCR SOMS ISST120 - RULES VIOLATION REPORT



**CALIFORNIA DEPARTMENT** *of*
**Corrections and Rehabilitation**

# RULES VIOLATION REPORT

| CDC NUMBER G03156 | INMATE'S NAME JOHNSON, CEDRIC G. | EPRD 03/02/2039 | FACILITY CIM-Facility B | HOUSING LOCATION CIM-B - B PH 3 - 312001L |
|---|---|---|---|---|
| VIOLATION DATE 08/08/2022 | VIOLATION TIME 10:00:00 | VIOLATION LOCATION CIM-Central Service - CENTRAL SERVICES | | |

| INMATE NOTIFICATION | | |
|---|---|---|
| POSTPONEMENT OF DISCIPLINARY HEARING | | |
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE SIGNATURE | DATE |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE SIGNATURE | DATE |
| ☐ I REVOKE my request for postponement. | INMATE SIGNATURE | DATE |
| STAFF ASSISTANT | | |
| ☐ REQUESTED    ☐ WAIVED BY INMATE | INMATE SIGNATURE | DATE |
| INVESTIGATIVE EMPLOYEE | | |
| ☐ REQUESTED    ☐ WAIVED BY INMATE | INMATE SIGNATURE | DATE |

**SUMMARY OF DISCIPLINARY PROCEDURES AND INMATE RIGHTS**
See California Code of Regulations, Title 15 (CCR) for details

**A.   TIME CONSTRAINTS -**

1.   A classified copy of the Rules Violation Report and any additional/supplemental information containing any elements of the violation charged shall normally be provided to the inmate within 15 days from the date the information leading to the charges is discovered by staff.

2.   The charges shall be heard within 30 days from the date the inmate is provided a classified copy of the Rules Violation Report unless the charges were referred for possible prosecution and the inmate has been granted a request for postponement of the disciplinary proceedings pending the outcome of the referral, if exceptional circumstances exist pursuant to CCR Section 3000, or the inmate is transferred out of the custody of the department. Postponement shall not bar any credit forfeiture.

3.   REFERRAL FOR PROSECUTION - **(Serious Rules Violations Only)** - Referrals for prosecution will not delay a disciplinary hearing unless you submit a request in writing for postponement of the hearing pending the outcome of such referral. You may revoke such request in writing at any time prior to the filing of accusatory pleadings by the prosecuting authority. A disciplinary hearing will be held within 30 days of staff receiving your written revocation of your request to postpone the hearing or within 30 days of receiving a response from the prosecuting authority. (CCR Section 3316-3320)

4.   Failure to meet the time constraints outlined in CCR Section 3320 shall preclude forfeiture of credits.

**B.   INVESTIGATIVE EMPLOYEE/STAFF ASSISTANCE -**

1.   General Information - You may request to have an Investigative Employee to assist in the investigation and/or a Staff Assistant assigned, to assist in the preparation, or presentation of your defense at the disciplinary hearing. Staff shall evaluate your request along with the criteria outlined in CCR Section 3315 (d)(1) and CCR Section 3315(d)(2) and determine if an Investigative Employee and/or Staff Assistant shall be assigned.

2.   Staff Assistant - If assigned, the Staff Assistant will inform inmates of their rights and of the disciplinary hearing procedures, advise and assist in the inmate's preparation for a disciplinary hearing, represent the inmate's position at the hearing, ensure that the inmate's position is understood, and that the inmate understands the decisions reached. (CCR Section 3318)

3.   Investigative Employee - **(Serious Rules Violations Only)** - If assigned, will gather information, question staff and inmates, screen witnesses, and complete and submit a written, non-confidential report to the disciplinary hearing officer. You have the right to receive a copy of the investigative employee's report 24 hours before a hearing is held. (CCR Section 3318)

4.   Witnesses - **(Serious Rules Violations Only)** - You may request the presence of witnesses at the hearing who can present facts related to the charges against you. You may also request the presence of the reporting employee and the investigative employee. You may, under the direction of the hearing officer, questions any witness present at the hearing. The hearing officer may deny the presence of witnesses when specific reasons exist. (CCR Section 3315)

5.   Personal Appearance - A hearing of the charges will not normally be held without your presence, unless you refuse to attend. (CCR Section 3320)

**C.   DISPOSITION** - At the end of the hearing, you will be advised of the findings and disposition of the charge. Within five working days, following review of the Rules Violation Report by the Chief Disciplinary Officer, you will be given a copy of the completed rule violation report, which will contain a statement of the findings and disposition and the evidence relied upon to support the conclusions reached. (CCR Section 3320)

**D.   APPEAL** - If you are dissatisfied with the process, findings or disposition, you may submit an inmate appeal within 30 days following receipt of the finalized copy of the Rules Violation Report and any other pertinent documentation (CCR Section 3084)



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

# NOTICE OF CLASSIFICATION HEARING

| INMATE NAME:<br>JOHNSON, CEDRIC G. | CDC NUMBER:<br>G03156 | DATE:<br>10/20/2022 | HOUSING:<br>B PH 3 - 312001L |
|---|---|---|---|

YOU WILL APPEAR BEFORE A INSTITUTION CLASSIFICATION COMMITTEE ON (OR AFTER) <u>10/27/2022</u>
FOR REVIEW AND CONSIDERATION OF THE FOLLOWING:  Institution Cls. Committee
(ASU/SHU/THU/PSU-ICC/DPU) - Subsequent ASU; Pre-MERD; Other (See Committee Action Comments)

☐ Inmate Waives Right To Appear In Person
☐ Inmate Waives Right To 72 Hour Notification

INMATE SIGNATURE:

**Comments**

- Review for PREMERD.
- Review for adverse transfer.
- Review for Close custody. (Pending A2 offense postpone)

| | D. Villalobos | | |
|---|---|---|---|
| STAFF<br>SIGNATURE: | | CCII | California Institution for<br>Men |
| | | TITLE | INSTITUTION |

CDCR SOMS ICCT154 - Notice Of Classification Hearing



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

# RVR SUPPLEMENTAL

| CDC NUMBER G03156 | INMATE'S NAME JOHNSON, CEDRIC G. | FACILITY CIM-Facility B | LOG NUMBER 000000007210168 | DATE 10/27/2022 |
|---|---|---|---|---|

○ SUPPLEMENTAL REPORT  ◉ INVESTIGATIVE REPORT  ○ STAFF ASSISTANT REPORT

On August 17, 2022, I was assigned the duties of Investigative Employee (IE) pertaining to CDCR-115 Log #7210168, submitted on Inmate JOHNSON, C. #G03156, for violating CCR 3016(d)-CONSPIRE- DISTRIBUTION OF CONTROLLED SUBSTANCE.
I informed Inmate JOHNSON, that my role as IE was a fact finder for the Senior Hearing Officer (SHO). Inmate JOHNSON stated that he did not have any objection to my serving in this capacity.

WRITTEN: August 11, 2022
RVR Log #:000000007210168
Rule Violation #:3016(d)-DISTRUBTION OF CONTROLLED SUBSTANCE.

I/M JOHNSON, C. - B-PH-312L (G03156) TABE SCORE 9.9

Inmate JOHNSON asked the following questions of Inmate RUPPEL (BP2012):

Q1: Did I have knowledge of or was I involved in any way with whatever Ms. Kline, Mr. Vasquez, or you may have had going on?
A1: No.

Q2: Have I ever conspired with you or anyone you know to introduce any kind of drugs into the Institution? - Deemed not relevant by SHO

Q3: Did my wife or anyone that I know drop off drugs with Ms. Kline or Mr. Vasquez? - Deemed not relevant by SHO

Q4: Did I know why you wanted $20.00 or who you had me sending it to?
A4: No.

Q5: Do I frenquently put money on your books in order to go to canteen? - Deemed not relevant by SHO

Q6: Did you ask my wife if she could text someone to see if they were O.K. for you? - Deemed not relevant by SHO

INVESTIGATIVE EMPLOYEE STATEMENT: As the Investigative Employee, I, Correctional Officer K. Goleco, have interviewed all relevant subjects regarding this CDCR-115. All pertinent information has been gathered and submitted in my report. I have no other relevant information to provide. Pern#115723

| SIGNATURE OF WRITER: K. Goleco ⊘ | TITLE: CO | DATE: 10/27/2022 |
|---|---|---|

CDCR SOMS ISST122 - RVR SUPPLEMENTAL

Name: JOHNSON, CEDRIC G.                                    CDC #: G03156   PID #: 11612005

ISSS003E   **RVR Mental Health Assessment** Monday October 31, 2022 05:34:13 PM

---

**Section I**

Inmate Name: JOHNSON, CEDRIC G.            CDCR #: G03156        Housing: CIM-Facility B
Specific Act: 3016(d)-[06]-Conspire - Distribution of a Controlled Substance
Could this offense result in a SHU term? ○ Yes     RVR Log              Date of
○ No                                               #: 000000007210168   Violation: 08/08/2022

MH LOC at the time of the Offense: GP
MH LOC at the time of the Assessment: GP
DDP Status: NCF
The inmate was referred for a mental health assessment for the following reasons(s)

| None |
|------|

---

**Section II**

The interview was conducted in a private location  ● Yes  ○ No  ○ N/A            Date: 10/31/2022

**If No, explain:**

| None |
|------|

The inmate was informed of the purpose of the assessment and the information shared during the interview is **not** confidential and will be used in adjudicating the RVR.  ● Yes  ○ No  ○ N/A

**If No, explain:**

| None |
|------|

Data source(s) for this evaluation:
☑ Health Care Record        ☑ Adaptive Supports form       ☐ PC Consultation      ☑ SOMS   ☑ ERMS
☐ Other:                    ☑ Staff Consultation:  CO Gonzalez

1. CCCMS/NON-MHSDS ONLY. Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate the need for assignment of a staff assistant (do not rely on the TABE score alone)?
○ Yes  ● No  ○ N/A

**Provide rationale:**

| There are no mental health factors to consider when assessing penalties. Pt not in mental health program and does not meet criteria for inclusion into mental health program at this time. Pt does not appear to have difficulties in understanding disciplinary process. |
|------|

2. In your opinion, was the inmate's behavior so *strongly influenced* by symptoms of a (a) *mental illness* and/or (b) *developmental disability/cognitive or adaptive functioning deficits* that the inmate would be better served by documenting this behavior in an alternate manner? If Yes: (1) provide a rationale that establishes a nexus between mental health symptoms or developmental disability/cognitive or adaptive functioning deficits and the behavior; (2) consult with the Program Supervisor; and (3) consult with the Chief of Mental Health (or designee), when applicable. If No, go to Question 3.
**a) Mental illness:**
○ Yes  ● No  ○ N/A

**Assessing clinician's rationale:**

| None |
|------|

---

CDCR SOMS ISST122 - CDC NUMBER: G03156 NAME: JOHNSON, CEDRIC G.                    Page 1 of 3

I agree with ~~the assessing clinician's recommendation:~~  ⚪ Yes  ⚪ No  ⦿ N/A

**Consulting Program Supervisor's rationale:**

| None |
|------|

Consulting Program Supervisor: _____  Date: _____

I recommend documenting this behavior in an alternative manner:  ⚪ Yes  ⚪ No  ⦿ N/A

**Chief of Mental Health's (or designee) rationale:**

| None |
|------|

Chief of Mental Health (or designee): _____  Date: _____

**b) Developmental disability/cognitive or adaptive functioning deficits:**
⚪ Yes  ⚪ No  ⦿ N/A

**Assessing clinician's rationale:**

| None |
|------|

I agree with the assessing clinician's recommendation:  ⚪ Yes  ⚪ No  ⦿ N/A

**Consulting Program Supervisor's rationale:**

| None |
|------|

Consulting Program Supervisor: _____  Date: _____

I recommend documenting this behavior in an alternative manner:  ⚪ Yes  ⚪ No  ⦿ N/A

**Chief of Mental Health's (or designee) rationale:**

| None |
|------|

Chief of Mental Health (or designee): _____  Date: _____

3. In your opinion, is there evidence to suggest that (a) *mental illness* and/or (b) *developmental disability/cognitive or adaptive functioning deficits* contributed to the behavior that led to the RVR? If Yes, establish a nexus between mental health symptoms or developmental disability/cognitive or adaptive functioning deficits and the behavior.
**a) Mental illness:**
⚪ Yes  ⦿ No  ⚪ N/A

**Provide rationale:**

| Mr. Johnson is not a participant in the mental health program. He was referred for a mental health RVR evaluation due to RVR being a Division A, B, or C offense or may result in a SHU term. Clinician completed thorough records review, and consulted with correctional officers in ASU.During the current interview, pt gave a logical and reality-based explanation of the incident. He denies allegations against him. Pt did not appear to be in a state of decompensation at the time of incident which would have contributed to RVR. After thorough records review and consultation with officer, a connection cannot be established between Pt's alleged behavior and symptoms of a major mental illness. |
|------|

**b) Developmental disability/cognitive or adaptive functioning deficits:**

CDCR SOMS ISST122 - CDC NUMBER: G03156 NAME: JOHNSON, CEDRIC G.                    Page 2 of 3

C Yes  C No  C N/A

**Provide rationale:**

| None |
|------|

4. If the inmate was found guilty of the offense, what mental health factors and/or developmental disability/cognitive or adaptive functioning deficits should the hearing officer consider when assessing the penalty, such as penalties that may have an adverse impact on the inmate's stability?

Examples of penalties include, but are not limited to, changes and reduction in, phone calls, visits (when permissible), day room, confined to quarters, loss of packages; loss of yard time, loss of appliances, etc.

**Provide your recommendation and rationale:**

| There are no mental health factors to consider when assessing penalties. Pt not in mental health program and does not meet criteria for inclusion into mental health program at this time. |
|------|

5. SHU OFFENSE ONLY. If the inmate is found guilty of the offense, are there any mental health factors and/or developmental disability/cognitive or adaptive functioning deficits that Institution Classification Committee should consider when assessing a SHU term?
C Yes  C No  C N/A

**Provide your recommendation and rationale:**

| There are no mental health factors to consider when assessing penalties. Pt not in mental health program and does not meet criteria for inclusion into mental health program at this time. |
|------|

6. DDP PARTICIPANTS ONLY. Does the inmate exhibit on-going behavior leading to disciplinary infractions that appears related to developmental disability/cognitive or adaptive functioning deficits? If Yes, refer inmate to the DDP Clinician for assistance in assessing the causes of the behavior and creating an intensive behavior modification plan.
C Yes  C No  C N/A  If Yes, complete a CDCR Form 128 MH-5, Mental Health Referral Chrono.

Did you consult with the DDP Clinician?  C Yes  C No  C N/A  Document Consultation on a Developmental Disabilities Progress Note.

**Provide rationale:**

| None |
|------|

Clinician: Elquza, Sami Licensed Clinical Social Worker          Phone Ext.: 99999          Date: 10/31/2022

| **Prior Page** |
|------|



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

Inmate Copy

# DISCIPLINARY HEARING RESULTS

| | | |
|---|---|---|
| Institution Name: California Institution for Men | Facility: CIM-Facility B | Log Number: 000000007210168 |
| Inmate Name: JOHNSON, CEDRIC G. | CDC #: G03156 | Bed Number: CIM-B - B PH 3 - 312001L |
| TABE Score: 09.9 | MH LOC: GP | DDP Status: NCF |

### DUE PROCESS

| | |
|---|---|
| Rule Violation #: 3016(d) | Specific Act: Conspire - Distribution of a Controlled Substance |
| Level: Serious | Offense Division: Division A2 |
| Offense Occurrence: 1st Occurrence | |
| Violation Date: 08/08/2022 | Violation Time: 10:00:00 |
| Hearing Date: 11/11/2022 | Hearing Time: 11:23:52 |

Did a laboratory confirm the evidence tested positive for Controlled substances?: N/A

| Actions Taken | | | | |
|---|---|---|---|---|
| **Date** | **Time** | **Type/Reason** | **Staff** | **Elapsed Days** |
| 08/10/2022 | 13:02:44 | RVR Ready for Review by Supv. | S. Hallis | 2 |
| 08/10/2022 | 14:01:49 | RVR Approved by Supervisor | R. Paredes | 2 |
| 08/11/2022 | 09:27:31 | RVR Ready for Review by Supv. | S. Hallis | 3 |
| 08/11/2022 | 09:52:25 | RVR Approved by Supervisor | D. Tristan | 3 |
| 08/11/2022 | 09:52:53 | RVR Classified | D. Tristan | 3 |
| 08/17/2022 | 14:14:22 | Inmate Copy Served<br>Initial Rules Violation Report; Incident Report;<br>Photograph(s); Medical Evaluation Report; Other | K. Goleco | 9 |
| 08/17/2022 | 14:15:49 | IE Assigned | K. Goleco | 9 |
| 08/17/2022 | 14:16:20 | Hearing Postponed | K. Goleco | 9 |
| 10/25/2022 | 09:23:10 | Hearing Postponement Revoked by Inmate | L. Quiroz | 78 |
| 10/25/2022 | 11:05:35 | Hearing Postponement Revoked by Inmate | E. Gonzalez | 78 |
| 10/25/2022 | 11:44:11 | Hearing Postponement Cleared | E. Gonzalez | 78 |

| 10/25/2022 | 11:47:43 | MH Assessment Requested | E. Gonzalez | 78 |
| 10/27/2022 | 15:06:15 | IE Report Prepared | K. Goleco | 80 |
| 10/27/2022 | 15:09:37 | IE Report Ready for Review | K. Goleco | 80 |
| 10/28/2022 | 09:58:41 | Supplemental Approved by Supervisor | M. Haston | 81 |
| 10/31/2022 | 11:12:38 | MH Assessment Received | U. UNKNOWN | 84 |
| 10/31/2022 | 18:32:09 | Inmate Copy Served MH Assessment Report | E. Nunez | 84 |
| 10/31/2022 | 18:32:56 | Inmate Copy Served Investigative Report | E. Nunez | 84 |

All Time Constraints Met?: Yes          SHO/HO DDP Certified?: Yes

**Due Process Additional Information:**

On July 17, 2022 the San Bernardino County Sheriff's Office sent samples of evidence discovered in case #222202448 to the Department of Justice (DOJ) Forensic Laboratory for confirmation of substance. On August 17, 2022 Inmate JOHNSON chose to postpone his RVR hearing pending outcome of referral for prosecution. On October 25, 2022 inmate JOHNSON revoked his request for postponement and his hearing was held.

## HEARING

○ Subject elected not to participate in the adjudication process by refusing to attend the hearing. An Informational Chrono was generated documenting the refusal to attend the hearing.
● Subject was Present, in good health and ready to proceed.

**Hearing Additional Information**

## DISABILITY

☐ Hearing ☐ Vision ☐ Mobility ☐ Learning ☐ Developmental/Cognitive ☐ Other ☑ None

Requires Accommodation? No

### DDP Specific Information

128-C2 Reviewed? Yes                    Current DDP Status Date: 01/29/2008

Did the Reporting Employee document the use of Adaptation Support(s)? N/A

| Adaptive Support | Contribute | How | |
|---|---|---|---|
|  |  |  |  |

| Victimization | Contribute | How | |
|---|---|---|---|

**Disability Additional Information:**

## MENTAL HEALTH ASSESSMENT

Mental Health Assessment Requested: Yes

Reason for Mental Health Assessment Request: Division A, B, or C offense or may result in a SHU term

Clinical Staff Recommended Staff Assistance Assignment: No

Clinical Staff determined Mental Health Symptoms strongly influenced behavior and recommended alternate documentation: No

Clinical Staff determined Developmental Disability strongly influenced behavior and recommended alternate documentation: No

Clinical Staff determined Mental Health Symptoms contributed to behavior: No

Clinical Staff determined Developmental Disability contributed to behavior: N/A

Clinical Staff provided information when assessing the penalties:

## STAFF ASSISTANT

Staff Assistant Assigned: No

Reason for assignment of Staff Assistant:

| SA Name | Date Assigned | Certified? | Meet 24 hours prior to hearing? | Present? | |
|---------|---------------|------------|----------------------------------|----------|---|
|         |               |            |                                  |          |   |

**Staff Assistant Additional Information:**

## INVESTIGATIVE EMPLOYEE

Investigative Employee Assigned: Yes

Reason for assignment of Investigative Employee: Housing Status

**Investigative Employee Additional Information:**

On August 17, 2022, I was assigned the duties of Investigative Employee (IE) pertaining to CDCR-115 Log #7210168, submitted on Inmate JOHNSON, C. #G03156, for violating CCR 3016(d)-CONSPIRE- DISTRIBUTION OF CONTROLLED SUBSTANCE.
I informed Inmate JOHNSON, that my role as IE was a fact finder for the Senior Hearing Officer (SHO). Inmate JOHNSON stated that he did not have any objection to my serving in this capacity.

WRITTEN: August 11, 2022
RVR Log #:000000007210168
Rule Violation #:3016(d)-DISTRIBUTION OF CONTROLLED SUBSTANCE.

I/M JOHNSON, C. - B-PH-312L (G03156) TABE SCORE 9.9

Inmate JOHNSON asked the following questions of Inmate RUPPEL (BP2012):

Q1: Did I have knowledge of or was I involved in any way with whatever Ms. Kline, Mr. Vasquez, or you may have had going on?

A1: No.

Q2: Have I ever conspired with you or anyone you know to introduce any kind of drugs into the Institution? - Deemed not relevant by SHO

Q3: Did my wife or anyone that I know drop off drugs with Ms. Kline or Mr. Vasquez? - Deemed not relevant by SHO

Q4: Did I know why you wanted $20.00 or who you had me sending it to?
A4: No.

Q5: Do I frequently put money on your books in order to go to canteen? - Deemed not relevant by SHO

Q6: Did you ask my wife if she could text someone to see if they were O.K. for you? - Deemed not relevant by SHO

INVESTIGATIVE EMPLOYEE STATEMENT: As the Investigative Employee, I, Correctional Officer K. Goleco, have interviewed all relevant subjects regarding this CDCR-115. All pertinent information has been gathered and submitted in my report. I have no other relevant information to provide. Pern#115723

## CONFIDENTIAL INFORMATION

Confidential Information Used: No

| Confidential Document Number | Author of Confidential Document | Date of Confidential Document | Reviewed by SHO/HO | Deemed Confidential | Reason(s) Information was Deemed Confidential |
|---|---|---|---|---|---|
| | | | | | ☐ Information which, if known to inmates, would endanger the safety of person(s). ☐ Information which, if known to inmates, would jeopardize the security of the institution. ☐ Specific medical or Psychological information which, if known to inmates, would be medically or psychologically detrimental to the inmate. ☐ Information provided and classified confidential by another governmental agency. ☒ A Security Threat Group debrief report, reviewed and approved by the debriefing subject, for placement in the confidential section of the central file. |

| Confidential Document Number | Confidential Source Number | Confidential Disclosure Form Issued | Sufficient Information Disclosed | Reason(s) Deemed Reliable |
|---|---|---|---|---|
| | | | | ☐ The confidential source has previously provided information which has proved to be true. ☑ Other confidential sources have independently provided the same information. ☐ The information provided by the confidential source is self-incriminating. ☐ Part of the information provided by the confidential source is corroborated through investigation or by information provided by non-confidential sources. ☐ The confidential source is the victim. ☐ This source successfully completed a polygraph examination. |

**Confidential Additional Information:**

## WITNESSES

Witnesses requested at Hearing

☐ Reporting Employee          ☐ Staff Assistant          ☐ Investigative Employee

☐ Other                      ☐ Inmate                   ☑ None

| Non-Inmate Witness(es) | | | | |
|---|---|---|---|---|
| **Name** | | **Rank** | **Type** | **Granted?** |

**Questions Asked**

| Inmate Witness(es) | | | | |
|---|---|---|---|---|
| **CDC#** | **Name** | | **Bed** | **Granted?** |

**Questions Asked**

**Witness Additional Information:**

## PLEA AND STATEMENT

**PLEA/STATEMENT:** The above circumstances were read aloud to subject and elected to plea: Guilty

⊙ Subject declined to make a statement

CDCR SOMS ISST126 - CDC NUMBER: G03156 NAME: JOHNSON, CEDRIC G.          Page 5 of 13

C Subject made a statement

**Comments:**

---

## FINDINGS

Subject was found: Guilty as Charged based on a preponderance of evidence.

Lesser Included Charge:

Level:                                              Offense Division:

Offense Occurrence:

**Comments:**

Inmate JOHNSON is found guilty of the charge "Rules violation Report Log # for a violation of CCR #3016(d)[04] Controlled Substances, Drug Paraphernalia, and Distribution Specific Act: Distribution of controlled substance. " based on the preponderance of evidence and factors surrounding this Rules Violation Report (RVR), which are as follows:

Guilty of Violating Title 15 CCR Section 3016(a) CONTROLLED SUBSTANCES, DRUG PARAPHERNALIA, AND DISTRIBUTION the Div. A-2 (8) offense CONSPIRACY TO COMMIT ANY A-1 OR A-2 OFFENSE. Specifically the Div. A-2 (6) offense CONSPIRACY TO DISTRIBUTE ANY CONTROLLED SUBSTANCE IN AN INSTITUTION/FACILITY. Penal Code 31 and Title 15 defines a Principle as a person involved in the commission of a crime, felony or misdemeanor, whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present, have advised and encouraged its commission, or who, by threats menaces, command or coercion, compel another to commit any crime. A conspiracy exists whenever two or more persons plan to commit a criminal act and their participation includes an overt act (PC 182). Agreement to participate is usually proven by circumstantial evidence such as movement towards a common goal or design. When agreement is shown by circumstantial evidence, it must be reasonable to conclude the inmate knew that he was participating in a criminal act and that he was promoting that criminal act.

SHO informed JOHNSON of his right to call witnesses during the hearing and asked if he had any witnesses to call to the hearing to provide testimony. SHO notes Inmate JOHNSON elected not to call any witnesses to this hearing. SHO asked Inmate JOHNSON if he had any additional evidence, documents, or proof to support his innocence. JOHNSON stated he had additional documents to support his defense. Inmate JOHNSON also did not request the reporting employee to be present during the hearing to cross-examine his or her testimony. SHO reviewed the documents JOHNSON brought to the hearing however SHO notes these documents provided no evidentiary value for a defense against the charges against JOHNSON.

During the hearing, SHO asked inmate JOHNSON, questions based on Correctional Officer S. Hallis, written report Log #07210168.

The following questions were asked by the SHO during the hearing to inmate JOHNSON to support a finding of Innocence based on this rules violation report Log #07210168, or demonstrate / establish a finding of guilt on behalf on Inmate JOHNSON.
Question #1, do you know Rebecca Cline and Kevin Vasquez? Answer: "Not at all ".
Question #2, do you know and inmate who goes by the nickname "TJ"? Answer: "Thomas Rupple".
Question #3, do you know of a payment of 400 to 700 dollars that was to be made to Rebecca Cline and Kevin Vasquez via Cash App? Answer: "I don't know anything about that Sir".
Question #4, do you know inmate Ruppel, T. (CDCR#BP2012)? Answer: "Yes".
Question #5, do you know and inmate Ruppel by nickname "FREAK"? Answer: "I don't know him by that".
Question #6, do you go by the moniker "Isa"? Answer "Yes".
Question #7, are you married to Erika Dunn? Answer: "Yes I am".
Question #8, how do you acknowledge her when you are speaking to her? Does she have a nickname or moniker? Answer: "Baby-Sweetheart".
Question #9, what's Erika Dunn your wife's phone number? Answer: "619-586-0537".
Question #10, are you friends/acquaintances with inmate Ruppel,T (CDCR#BP2012) moniker OF "TJ"? Answer: "No".
Question #11, on or about July 20, 2022 did you possess an illegal cell phone in State Prison at CIM? Answer: "No".

Question #12, do you know what Cash App is? Answer: "Yes, a way to send or receive money".
Question #13, on or about July 20, 2022 did you have a Cash App account with the user name ($IsaFamily) registered to you? Answer: "No that APP belongs to my wife".
Question #14, did you make a 20.00 payment via Cash App from an unauthorized cell phone to Rebecca Cline to put gas in her car to deliver narcotics to the California Institution for Men? Answer: "Yes".
Question #15, how frequent do you talk to your wife? Via the Unit Office phone? Answer: "Once a day".
Question #16, did you talk to your wife on July 19, 2022 at approximately 0725 hours? Answer: "Yes".
Question #17, name the make, model and color of your wife's vehicle? Answer: "burgundy Nissan Altima or maxima".
Question #18, Who is Becca? Answer: "I don't know a Becca".
Question #19, when and where did you establish the cash app for this illegal phone? Answer: "I don't remember the date or where I was at".
Question #20, what's your log-on for Cash App? Answer: "Isafamily".
Question #21, what bank account is used for this App? Answer: "Bank of America".
Question #22, how Long have you had this bank account? Answer: "11 years since 2011 ".
Question #23, where are the documents that verify this Cash App account exist? Answer: "There's no documents, its all in the phone".
Question #24, what are the monetary limits of your Cash App account? Answer: "I have no clue".
Question #25, If TJ is not a friend or acquaintance why are you placing money ($140.00)on his books every month? Answer: " because I owe restitution on my case and he was asking people to put money on his books to shop at the canteen for them".
Question #26, in the earlier questioning, I asked you if you knew a Becca and you said "no" however on July 19, 2022 during a conversation with your wife in your very first opening statement to your wife you said did you talk to Becca? Later on in the conversation with your wife you said, "You should hit Becca baby and make sure that was good". Do you know Rebecca Cline? Answer: "No, she is a friend of inmate Ruppel".
Question #27, Additionally, frame #13,14 and 15 of the Photo Evidence Log, there were pictures of Inmate Ruppel's Cash App account (username $Freaknasty), which Cline explained she would send and receive money from. While taking photographs of Cline's Cash App account, ISU discovered the twenty dollar payment she indicated she receive for gas to deliver the narcotics. The payment was from the name Cedric Johnson with Cash App username, "$Isafamily." According to SOMS Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156. Inmate JOHNSON Conspiracy to distribute drugs in a state prison is a felony. Who paid the 20.00 for gas you or your wife? Answer: "I paid the 20.00 for the gas".

Based on the establishment of guilt on the criminal elements of this rules violation. SHO notes Inmate JOHNSON, is being found guilty of the Rules Violation CCR Title 15 Section 3016 (d)-[06] Controlled Substances, Drug Paraphernalia, and Distribution Specific Act: Distribution of a Controlled Substance, based on the weight of the evidence and on JOHNSON'S self-admission of guilt. The preponderance of evidence standard has been met to support a finding of Guilt.

## MENTAL HEALTH ASSESSMENT CONSIDERATION

(Documentation of opinions to be used for consideration by the hearing official and the reasoning shall be documented in this section.)

### Comments:

This SHO reviewed and considered the 115-MH-A, in which the assessing Licensed Clinical Social Worker S, Elquza, indicated There are no mental health factors to consider when assessing penalties. Pt not in mental health program and does not meet criteria for inclusion into mental health program at this time. Pt does not appear to have difficulties in understanding disciplinary process.

Specifically Licensed Clinical Social Worker S. Elquza, documented during the MHA Mr. Johnson is not a participant in the mental health program. He was referred for a mental health RVR evaluation due to RVR being a Division A, B, or C offense or may result in a SHU term. Clinician completed thorough records review, and consulted with correctional officers in ASU. During the current interview, pt gave a logical and reality-based explanation of the incident. He denies allegations against him. Pt did not appear to be in a state of decompensation at the time of incident which would have contributed to RVR. After thorough records review and consultation with officer, a connection cannot be established between Pt's alleged behavior and symptoms of a major mental illness.

## EVIDENCE

The following evidence was used to support the findings:

AVSS Available: No

AVSS Impact:

**Comments:**

1) The SHO reviewed and considered the rules violation report log #07210168 authored by Officer S. Hallis. This piece of evidence (report) was used by the SHO as a result of a question and answer session during the hearing with inmate JOHNSON. The information obtained from the question and answer session was used by the SHO to support, establish, and demonstrate a finding of guilt on behalf of inmate JOHNSON to violation of California Code of Regulation Title 15 Section 3005 (d) [6] Specific Act: Conspire - Distribution of a Controlled Substance.

2) The SHO reviewed and considered Inmate JOHNSON'S Guilty Plea during the hearing. This piece of evidence was used by the SHO to establish/support a finding of guilt on behalf of inmate JOHNSON to violation of California Code of Regulation Title 15 Section 3005 (d) [6] Specific Act: Conspire - Distribution of a Controlled Substance.

3) SHO reviewed and considered the question and answer session during the hearing specifically Question #12, do you know what Cash App is? Answer: "Yes, a way to send or receive money". Question #14, did you make a 20.00 payment via Cash App from an unauthorized cell phone to Rebecca Cline to put gas in her car to deliver narcotics to the California Institution for Men? Answer: "Yes". Question #27, Additionally, frame #13,14 and 15 of the Photo Evidence Log, there were pictures of Inmate Ruppel's Cash App account (username $Freaknasty), which Cline explained she would send and receive money from. While taking photographs of Cline's Cash App account, ISU discovered the twenty dollar payment she indicated she receive for gas to deliver the narcotics. The payment was from the name Cedric Johnson with Cash App username, "$Isafamily." According to SOMS Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156. Inmate JOHNSON Conspiracy to distribute drugs in a state prison is a felony. Who paid the 20.00 for gas you or your wife? Answer: "I paid the 20.00 for the gas". This piece of evidence was used by the SHO to establish/support a finding of guilt on behalf of inmate JOHNSON to violation of California Code of Regulation Title 15 Section 3005 (d) [6] Specific Act: Conspire - Distribution of a Controlled Substance.

4) SHO reviewed and considered civilian testimony when interviewed by ISU Offcers Ross and Hallis. Rebecca Cline consented to allowing Officers Hallis and Ross view and take pictures of relevant text messages, photographs, Cash App payments and her call history. Cline showed Officers Hallis and Ross text messages she received from Inmate Ruppel which included a photograph of the location where the narcotics were to be dropped. Cline also had a text conversation discussing plans to drop the narcotics and inquiring if the drop has been completed. Cline showed Officer Hallis money transactions from Inmate Ruppel's Cash App account (username $Freaknasty). While viewing Cline's Cash App account, Officer Hallis discovered a payment of twenty dollar she received from a person named Cedric Johnson (username $Isafamily). Cline explained this money was for gas so she and Vasquez could deliver the narcotics. According to SOMS, Cedric Johnson is listed as, Inmate Johnson, Cedric, CDCR # G03156, housed at CIM. On February 12, 2020, a confidential memorandum was authored by Correctional Officer T. Billington, which identified Inmate Johnson as having the moniker "Isa" (similar to the Cash App name $Isafamily). Furthermore, according to SOMS Inmate Johnson's wife's name is Erika Dunn. Cline was shown a photograph of Erika Dunn and confirmed she was the female she and Vasquez met with at 7-Eleven. Cline was also shown a photograph of Inmate Johnson and confirmed she had seen him in the background during a FaceTime call with Inmate Ruppel. This piece of evidence was used by the SHO to establish/support a finding of guilt on behalf of inmate JOHNSON to violation of California Code of Regulation Title 15 Section 3005 (d) [6] Specific Act: Conspire - Distribution of a Controlled Substance.

5) The SHO reviewed and considered the CDCR-837 Crime Incident Report associated with this incident. Incident Commander D. Tristan, completed a CDCR-837 Crime Incident Report Log #042258. This report thoroughly documents the crime committed "Conspiracy to Distribute of a Controlled Substance in a State Prison " and identifies inmate JOHNSON as the perpetrator/subject of this Crime, with the use of Staff-Witness Reports, Medical Reports, Holding cell Logs etc. The contents of this incident report Log# 042258 was used by the SHO to establish/support a finding of guilt on behalf of inmate JOHNSON to violation of California Code of Regulation Title 15 Section 3005 (d) [6] Specific Act: Conspire - Distribution of a Controlled Substance.

6) The SHO reviewed and considered the Investigative Employees report however based on the information/evidence received during the investigation their was not enough to evidence to prove inmate JOHNSON'S innocents to the charges against him..

**DISPOSITION**

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 151 Days | Yes | ☑ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Days | | | ☐ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Weekends | | | ☐ | ☐ | ☐ | ☐ | | |
| Disciplinary Detention | | | ☐ | ☐ | ☐ | ☐ | | |
| Privilege Group C | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Loss of Pay | 90 Days | | | | | | | |
| Canteen Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Phone Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Extra Duty | | | ☐ | ☐ | ☐ | ☐ | | |
| Yard Recreation Privileges | 10 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 11/21/2022 |
| Day Room Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Packages Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Property Restrictions | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Visiting Privileges | 365 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 11/11/2023 |
| Contact Visiting Privileges | 730 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2023 | 11/10/2025 |
| Contact Visiting (Permanent Loss) | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loss of Family Visits | 3 Years | No | ☑ | ☐ | ☐ | ☐ | 11/10/2025 | 11/10/2028 |
| Permanent Loss of Family Visits | | | | | | | | |
| Trust Account Hold | | | | | | | | |
| Mandatory Drug Testing | 1 Month | | | | | | 11/11/2022 | 11/11/2023 |
| IEX Control Suit | | | | | | | | |

Counseled Regarding Misconduct:  with reprimand

**You will receive a loss of pay for this RVR.**

☐ Impose Suspended Sanctions                    ☐ Reinstate Suspended Sanctions

**Sanction Mitigation Additional Information:**

(Hearing officials are required to document whether a mitigation, based on a MH-A, is appropriate and the reasoning used to arrive at their decision.)

During the MHA interview Licensed Clinical Social Worker, S. Elquza, indicated: If found guilty, there are no mental health factors to consider when assessing penalties. Pt not in mental health program and does not meet criteria for inclusion into mental health program at this time. Based on the Mental Health Assessment SHO elected to mitigate the assessment of penalties by assessing the low range of the credit forfeiture schedule,

**Comments:**

Referred to Classification Committee ICC

For ☑ SHU Term Assessment  ☐ Program Review  ☐ Un-Assignment  ☑ Substance Abuse Treatment

**Disposition Additional Information:**

## ENEMY CONCERNS

◉ Not Applicable
○ Subject states he/she does not have Enemy or Safety Concerns.
○ One or more of the inmates involved has stated there is lingering animosity towards one another. Therefore, the SHO has entered non-confidential separation alerts for the following inmates:
○ Based on the totality of circumstances and/or information garnered by staff, the Hearing Official has determined an enemy situation exists and ensured the below non-confidential separation alerts were entered:

## SECURITY THREAT GROUP

Security Threat Group Nexus?: No

**Security Threat Group Nexus Additional Information:**

## FINAL SECTION

| Contraband Type | Disposition | Disposition Comments |
|---|---|---|
| | | |

**Additional Information:**

## CREDIT RESTORATION

☑ Subject was advised of his/her right to restoration of credits under CCR 3327, 3328, and 3329.

☑ Subject was advised Credit Forfeiture for a Division 'A', 'B' or 'C' offense will not be restored.

☑ At the conclusion of the hearing Subject was advised of the findings, disposition, and his/her right to appeal per CCR 3084.1.

**Hearing Official**

| V. Grant | TITLE: Lieutenant | DATE: 11/26/2022 |
|---|---|---|

## FINDINGS (BY CDO)

Subject was found: Guilty as Charged based on a preponderance of evidence.

Lesser Included Charge:

Level:                              Offense Division:

Offense Occurrence:                 CDO Summary: Affirming The Hearing Results

**Comments:**

## DISPOSITION (BY CDO)

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 151 Days | Yes | ☑ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Days | | | ☐ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Weekends | | | ☐ | ☐ | ☐ | ☐ | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Disciplinary Detention | | | ☐ | ☐ | ☐ | ☐ | | |
| Privilege Group C | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Loss of Pay | 90 Days | | | | | | | |
| Canteen Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Phone Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Extra Duty | | | ☐ | ☐ | ☐ | ☐ | | |
| Yard Recreation Privileges | 10 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 11/21/2022 |
| Day Room Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Packages Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Property Restrictions | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 12/11/2022 |
| Visiting Privileges | 365 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2022 | 11/11/2023 |
| Contact Visiting Privileges | 730 Days | No | ☐ | ☐ | ☐ | ☐ | 11/11/2023 | 11/10/2025 |
| Contact Visiting (Permanent Loss) | | | | | | | | |
| Loss of Family Visits | 3 Years | No | ☐ | ☐ | ☐ | ☐ | 11/10/2025 | 11/10/2028 |
| Permanent Loss of Family Visits | | | | | | | | |
| Trust Account Hold | | | | | | | | |
| Mandatory Drug Testing | 1 Month | | | | | | 11/11/2022 | 11/11/2023 |

| IEX Control Suit | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

**You will receive a loss of pay for this RVR.**

☒ Impose Suspended Sanctions          ☐ Reinstate Suspended Sanctions

Comments:

| |
|---|

---

**Chief Disciplinary Officer**

Comments:

| |
|---|

---

| L. Quiroz ⊚ | | TITLE:<br>Associate Warden | DATE:<br>12/01/2022 |
|---|---|---|---|

CDCR SOMS ISST126 - DISCIPLINARY HEARING RESULTS



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

# CLAIMANT GRIEVANCE RECEIPT ACKNOWLEDGMENT

**Offender Name:** JOHNSON, CEDRIC G.          **CDC#:** G03156

**Date:** 12/27/2022

**Current Location:** CIM-Facility C          **Current Area/Bed:** C B 2212001L

**From:** Office of Grievances at California Institution for Men

**Re:** Log # 000000345117

The California Department of Corrections and Rehabilitation Office of Grievances at California Institution for Men received your grievance on 12/27/2022. Your grievance has been assigned for review and response.

Pursuant to California Code of Regulations, title 15, the Office of Grievances will complete its review no later than 02/26/2023.

Please be informed that the Office of Grievances will not respond to any inquiries about the status of a grievance prior to the date shown above.

CDCR SOMS OGTT300
CLAIMANT GRIEVANCE RECEIPT ACKNOWLEDGMENT

DEPARTMENT OF CORRECTIONS AND REHABILITATION

STATE OF CALIFORNIA
GRIEVANCE
CDCR 602-1 (03/20)

Page 1 of 2

| STAFF USE ONLY | Grievance #:_____ Date Received:_____ |
| | Date Due:_____ |
| | Categories:_____ |

_This is the process to ask for help with a complaint._

Claimant Name:_____ CDCR #:_____ Current Housing/Parole Unit:_____

Institution/Facility/Parole Region:_____

In order for the Department to understand your complaint, make sure you have answered the following questions:

- *What is the nature of your complaint?*
- *When and where did the complaint occur?*
- *Who was involved?*
- *Which specific people can support your complaint?*
- *Did you try to informally resolve the complaint?*
- *What rule or policy are you relying on to make your complaint?*
- *Are there documents that would be helpful to support your position? List the documents if you do not have them. Please note that documents submitted with this form will not be returned.*
- *What specific action would resolve your complaint?*

Attention Warden Hill, Associate Warden Bishop, Captain Gilman and all other agents who diorectly or indirectly contributed to violating grievant's rights stated below. This grievance constitutes sufficient notice pursuant to PLRA requirements.

Grievant is being denied due process rights to a disciplinary hearing prior to being punished with loss of privileges. Specifically, grievant is being denied family visiting privileges permitted under 15CCR3117. More specifically, grievant is not convicted of an offense under 15CCR3117(b)(1), there is no evidence of misconduct under 15CCR3117(b)(1), 3117(b)(1)(B), or 3117(b)(1)(C). Further, grievant is neither; designmated close custody; a condemned inmate; assigned to a reception center; in AdSeg, in a SHU; on "C" status; guilty of a Division A or B offense within the last 12 months; nor guilty of distribution of a controlled substance while incarcerated in a state prison under 15CCR3016(d), as stated in 15CCR3117(b)(2).

Grievant has a due process right to a hearing before family visiting privileges are revoked. Only if found guilty, the grievant's disposition "upon" completion of the fact-finding portion of the disciplinary hearing" can grievant be denied family visiting privileges, and only in accordance

STATE OF CALIFORNIA
**GRIEVANCE**
CDCR 602-1 (03/20)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2

with 15CCR3315.

According to the courts, because CDCR deliniates all reasons for denying family visitation, if said reasons do not apply to grievant, grievant is, then, allowed family visitation.

Grievant requests family visitation privileges to be immediately reinstated and afforded by 15CCR3117 and 3315 as amended and approved under Government Code 11349.3, OAL Matter 2018-1130-07 effective Jan 15, 2019.

If family visitation cannot be immediately reinstated for grievant at California Institution for Men, Facility A, grievant demands immediate transfer to a facility that can immediately grant reinstatement of grievant's family visitation privileges.

Reminder: Please attach all documents in your possession that support your claim(s).

Please note that this form and supporting documents will not be returned to you.

Claimant Signature: _____   Date Signed: _____

DISTRIBUTION    Original: Claimant's File    Copies: CAP, CAPO and Claimant



**CALIFORNIA DEPARTMENT of Corrections and Rehabilitation**

# OFFICE OF GRIEVANCES DECISION

**Offender Name:** JOHNSON, CEDRIC GARNETT

**CDC#:** G03156

**Current Location:** CIM-Facility C

**Date:** 05/16/2023

**Current Area/Bed:** C  B  2 - 212001L

**Log #:** 000000391495

**Claim #: 001**

**Received at Institution/Parole Region:** California Institution for Men

**Submitted to Facility/Parole District:** California Institution for Men

**Housing Area/Parole Unit:**

**Category:** Offender Discipline                **Sub-Category:** Serious Rules Violation Report

### I. CLAIM

You contend various Due Process Violations regarding Rules Violation Report (RVR) Log #7210168, in which you were charged for violation of California Code of Regulation (CCR), Title 15, Section 3016(d) -[06] "Conspire - Distribution of a Controlled Substance". You further contend the charges made against you cannot be a completed conspiracy unless there are controlled substances. You further contend CDCR regulations prohibit inmates from losing work/behavior credits for RVR's related to controlled substances unless a laboratory has confirmed that those substances seized are in fact controlled substances. Lastly, you contend the findings as it relates to your plea.

You are requesting RVR Log # 7210168 be dismissed in the interest of justice.

### II. RULES AND REFERENCES

#### A. CONTROLLING AUTHORITY

California Code of Regulations (CCR), Title 15, Section 3000
CCR, Section 3016 Controlled Substances, Drug Paraphernalia, and Distribution
CCR, Section 3290 Methods for Testing of Controlled Substances or for Use of Alcohol
CCR, Section 3312 Disciplinary Methods
CCR, Section 3315 Serious Rule Violations
CDCR Department Operations Manual (DOM), Chapter 5, Article 15, Controlled Substances

#### B. DOCUMENTS CONSIDERED

CDCR RVR 115 Log# 7210168.
Disciplinary Hearing Results dated 11/11/2022.
RVR Mental Health Assessment dated 10/31/2022 authored by LCSW S. Elquza.
San Bernardino County Sheriff's lab results.
GA-22 Inmate Request for Interview - revoke of postponement dated 10/24/22.

### III. REASONING AND DECISION

A thorough review has been conducted regarding the Grievance presented, which was based on the available facts, information provided in your grievance and information obtained during the review in accordance with the CDCR Form 602-1 Grievance and the California Code of Regulations (CCR), Title 15.

The RVR revealed that you were charged with violating CCR Title 15, Section 3016(d) - [06] "Conspire - Distribution of a Controlled Substance".

CDCR Department Operations Manual (DOM), Chapter 5, Article 15, Section 52010.3, Definitions; (c) Distribution and Distributing, states in part; Distribution means the sale or conspiring with others in arranging for, the introduction of controlled substances into any CDCR institution for the purpose of sales or distribution.

CDCR Department Operations Manual (DOM), Chapter 5, Article 15, Section 52010.4, Description of Offenses; (a) Possession, Distribution of Controlled Substances or Controlled Medications, states in part; Inmates are prohibited from distributing or arranging for the introduction of controlled substances into any CDCR institution.

California Code of Regulation (CCR), Title 15, Article 1, 3290 (f) states in part; Field testing of seized substances that are suspected of being a controlled substance are presumptive, however the results may be used to charge an inmate with a serious rules violation. Disciplinary action for possession of a controlled substance based solely on a field or on-site test shall not include the loss of work/behavior credits, or pay, or loss of paid work assignment unless a laboratory has confirmed that the suspected substance is in fact a controlled substance, or the inmate has admitted to possessing the controlled substance, accepts the results of a field test, and waives the requirement of testing by a laboratory, and has signed a document to that effect.

The discovery date of the RVR was August 8, 2022. You received your initial copy of the RVR on August 17, 2022, which was within 15 days of discovery, in accordance with CCR, Section 3320(a). The Hearing was postponed on August 17, 2022 pending outcome of referral for prosecution.

The Due Process Additional Information Section of the hearing states in part; On July 17, 2022 the San Bernardino County Sheriff's Office sent samples of evidence discovered in case #222202448 to the Department of Justice (DOJ) Forensic Laboratory for confirmation of substance. On August 17, 2022 Inmate JOHNSON chose to postpone his RVR hearing pending outcome of referral for prosecution. On October 25, 2022, Inmate JOHNSON revoked his request for postponement. The Hearing was held on November 11, 2022. It was determined that the RVR was completed in accordance with CCR Title 15, Section, 3315 (d)(1) and that all time constraints had been met.

The RVR Hearing was conducted on November 11, 2022, at approximately 1123 hours, with Senior Hearing Officer (SHO) Lieutenant V. Grant. The Disciplinary Hearing Results reflects, you attended the hearing and entered a plea of "Guilty" and made no additional statement. The SHO clearly documented within the Disciplinary Hearing Results, you did not request any witnesses at the time of the RVR Hearing.

The photographic evidence clearly shows the controlled substances and the way in which they were separately packaged was for something more than personal use. Distributing a Controlled Substance requires a Conspiracy. A conspiracy exists whenever two or more persons plan to commit a criminal act and their participation includes an overt act. An overt act is any action that commits the participants to carrying out this criminal act. In the case of this conspiracy, the evidence shows the planned criminal act to introduce controlled substances into an institution and the overt acts carried out by you and your accomplices. You along with the other members of this conspiracy had assigned roles and willfully carried out these roles. You were not only aware of the plans you actively promoted and assisted in these plans. The text messages and photographic evidence shows a reasonable presumption of conspiracy as a result of the planned actions. Anyone who voluntarily participates in a conspiracy is responsible for the criminal actions of any other member of the conspiracy. You are determined to be a member of the conspiracy.

Your second contention pertains to regulations which prohibit inmates from losing work/behavior credits for RVR's as it relates to controlled substances. California Code of Regulation (CCR), Title 15, Article 1, 3290 (f) speaks to Disciplinary action for possession of a controlled substance based solely on a field or on-site test shall not include the loss of work/behavior credits. Possession takes the form of either actual or constructive possession. Your constructive possession was proven in the fact that anyone who voluntarily participates in a conspiracy is responsible for the criminal actions of any other member of the conspiracy. Therefore, the SHO was justified in assessing you the loss of work/behavior credits. Being involved in this conspiracy finds you culpable of both possession and distribution by the commission of your overt acts.

The Evidence section of the hearing, comment 2) states in part; The SHO reviewed and considered Inmate JOHNSON'S Guilty Plea during the hearing. This piece of evidence was used by the SHO to establish/support a finding of guilt on behalf of inmate JOHNSON.

Office of Appeals (OOA) Decision dated April 21, 2023, ruled the following. The Office of Grievances' response relied upon the hearing result document, which appellant contends is inaccurate, to refute appellant's claim that a guilty plea was not entered. Further, while the Office of Appeals was able to find the San Bernardino Sheriff's Department crime report, which reflects the seized contraband to include heroin and methamphetamine, the Office of Appeals was unable to find the "laboratory" report. This claim is granted.
OOA provided the following three remedies: The California Institution for Men shall (1) open a new Offender Grievance Tracking System log number to review this matter. (2) Without solely relying upon the rules violation hearing results, the review shall collect sufficient information to address the alleged inaccuracy of the documented plea. (3) Further, the institution shall upload into the Offender Grievance Tracking log the laboratory results of the controlled substance the location of the report, including the date of testing.

In regards to remedy (1), the CIM OOG initiated OOG #391495.

In regards to remedy (2), as noted in the original OOG and OOA response the preponderance of the evidence was established during the investigation and adjudication. In addition, the Senior Hearing Officer (SHO) appropriately documented it.
Senior Hearing Officer (SHO) Lieutenant Grant was interviewed on April 27, 2023 at 1103 hours, regarding his recollection of the RVR Hearing in question.

Lt. Grant stated he has been a SHO since 2006 and has maintained his proficiency by staying up to date with all training. Lt. Grant has served in the capacity of Training Manager and has trained most of our staff on the RVR process, to include other SHO on due process and appropriate hearing procedures.

When specifically asked about this RVR Hearing, Lt. Grant stated he clearly recollects Inmate Johnson desiring to expedite the adjudication by revoking his original postponement. In an effort to get the incident behind him and be released from administrative segregation. When asked about the inmate's plea, Lt. Grant stated Inmate Johnson clearly pled guilty.

In regards to remedy (3), ISU was able to track down the lab results from the arresting agency and they were uploaded to this grievance response. The lab results are positive for methamphetamine.

**IV. Comments**

**Decision: Denied**

After a thorough review of all the documents and evidence presented to the Office of Grievances, it is the order of the Office of Grievances to DENY this claim.

If you are dissatisfied with this response you may appeal this decision by mailing the CDCR Form 602-2 included in this response to the California Department of Corrections and Rehabilitation, Office of Appeals. Do not resubmit this claim to the Office of Grievances.

| Staff Signature | Title | Date/Time |
|---|---|---|
| T. Pennington [PETR002] | Reviewing Authority | 05/15/2023 |

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (Rev. 01/22)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| STAFF USE ONLY | OGT Log No: 000000345117 | Date Received: |
| | Decision Due Date: | |
| | Categories: | |

| Claimant Name: | JOHNSON, CEDRIC GARNETT | CDCR #: | G03156 |

Institution/Parole Region: _____ Current Housing/Parole Unit: _____

OOA Review

OOG Notification: Y / N
Initial: _____ Date: 2/21/23

**STAFF USE ONLY**

REC BY OOA

FEB 2 1 2023

_Use this form to appeal a decision or a remedy by the Office of Grievances._

Do not include new complaints on this form, they must first be filed with the Office of Grievances on a Form 602-1.

OGT Log No: 000000345117          Claim No: _____

Explain the reason for your appeal. Be as specific as you can.

_I am dissatisfied with the response I was given because_ the substances that were seized were never subjected to field testing or laboratory testing BEFORE the hearing. It does not matter how the substances were packaged or how they appeared. Testing was required and it simply did not occur. That being the case it was improper to take good-time credits for a conspiracy that was not completed because there are no controlled substances. Finally, the institution ignored my contention that I did NOT plead guilty.

> **This form shall be submitted by mail to:**
> Office of Appeals
> Department of Corrections and Rehabilitation
> P.O. Box 942883
> Sacramento, CA 95811

**IMPORTANT:**
The Office of Appeals will consider all of the supporting documentation you previously submitted to the Office of Grievances when reviewing your appeal, but will _not_ consider any new documentation. Therefore, it is recommended you not attach any documentation to this form. Furthermore, any documentation you attach to this form will not be returned to you.

Claimant Signature: _Cedric Johnson_          Date Signed: February 13, 2023

_ADA Accessible_

STATE OF CALIFORNIA
**APPEAL OF GRIEVANCE**
CDCR 602-2 (Rev. 01/22)

**CONTINUATION PAGE**

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 2 of 2

OGT Log No: 00000345117

Claim No:

Explain the reason for your appeal. Be as specific as you can.
I am dissatisfied with the response I was given because Also my supporting Witness to my grievance was never questioned V. Grant Correctional Lieutenant Senior Hearing Officer

REC BY OOA

FEB 2 1 2023

*ADA Accessible*



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation

## OFFICE OF APPEALS DECISION

**Offender Name:**  JOHNSON, CEDRIC GARNETT

**CDC#:**  G03156

**Current Location:**  CIM-Facility C

**Date:**  08/05/2023

**Current Area/Bed:**  C  B  2 - 212001L

**Log #:**  000000391495

---

### Claim #  001

**Received at Institution/Parole Region:**  California Institution for Men

**Submitted to Facility/Parole District:**  California Institution for Men

**Housing Area/Parole Unit:**

**Category:**  Offender Discipline

**Sub-Category:** Serious Rules Violation Report

### I. ISSUE ON APPEAL

The Office of Appeals granted CDCR Form 602, Log No. 345117 for deficiencies. The remedy provided was for the institution to collect sufficient information to address the alleged inaccuracy of the documented plea and for the laboratory results of the controlled substance to uploaded for review.

### II. RULES AND REFERENCES

#### A. CONTROLLING AUTHORITY

Title 15, section 3000, 3001, 3270, 3315, 3320, 3323, 3380 and 3481; Department Operations Manual, sections 54100.20 and 54100.20.3.

#### B. DOCUMENTS CONSIDERED

CDCR Form 602, Log No. 391495; CDCR Form 602, Log No. 345117; Rules Violation Report, Log No. 7210168 (Conspire - Distribution of a Controlled Substance); San Bernardino County Sheriff's Department Scientific Investigations Division, Report of Examination, received by Chino Hills Police Department on September 20, 2022

### III. REASONING AND DECISION

Civilians were found to be in possession of controlled substance and the investigation uncovered appellant's participation and assistance in attempting to have the controlled substance brought to the institution. The controlled substance found on the civilians was tested, yielding positive results for methamphetamine. Appellant elected to postpone the hearing on August 17, 2022, then revoked postponement on October 25, 2022. The hearing was held on November 11, 2022. The senior hearing officer was interviewed during the Office of Grievances' review. The senior hearing officer confirmed appellant made a guilty plea, corroborating the plea outlined on the hearing document. Whether appellant received a copy of the San Bernardino County Sheriff's Department Scientific Investigations Division, Report of Examination, received by Chino Hills Police Department on September 20, 2022, more than 24 hours prior to the hearing remains unclear. For this reason, this claim is granted.

### IV. REMEDY

The California Institution for Men shall have Rules Violation Report, Log No. 7210168 (Conspire - Distribution of a Controlled Substance) reissued and reheard pursuant to the Department Operations Manual, sections 54100.20 and 54100.20.3.

**Decision: Granted**

After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is granted. This decision exhausts the administrative remedies available to the claimant within CDCR.

| Staff Signature | Title | Date/Time |
|---|---|---|
| H. Moseley [MOHO002] | Reviewing Authority | 08/04/2023 |

DocuSign Envelope ID: 68C046EE-958B-4545-9EE8-3B43C865239A



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

# AMENDED OFFICE OF APPEALS DECISION

**Offender Name:** JOHNSON, CEDRIC GARNETT

**CDC#:** G03156

**Current Location:** CIM-Facility C

**Date:** 9/9/2023

**Current Area/Bed:** C B 2 - 212001L

**Log #:** 000000391495

---

### Claim # 001

Received at Institution/Parole Region:   California Institution for Men

**Submitted to Facility/Parole District:**   California Institution for Men

**Housing Area/Parole Unit:**

**Category:** Offender Discipline          **Sub-Category:** Serious Rules Violation Report

## I. ISSUE ON APPEAL

The Office of Appeals granted CDCR Form 602, Log No. 345117 for deficiencies. The remedy provided was for the institution to collect sufficient information to address the alleged inaccuracy of the documented plea and for the laboratory results of the controlled substance to uploaded for review.

## II. RULES AND REFERENCES

### A. CONTROLLING AUTHORITY

Title 15, section 3000, 3001, 3270, 3315, 3320, 3323, 3380 and 3481; Penal Code, section 184

### B. DOCUMENTS CONSIDERED

CDCR Form 602, Log No. 391495; CDCR Form 602, Log No. 345117; Rules Violation Report, Log No. 7210168 (Conspire - Distribution of a Controlled Substance)

## III. REASONING AND DECISION

The senior hearing officer was interviewed during the Office of Grievances' review. The senior hearing officer confirmed appellant made a guilty plea, corroborating the plea outlined on the hearing document. It was not necessary to provide appellant a copy of San Bernardino County Sheriff's Department Scientific Investigations Division, Report of Examination prior to the hearing. Specifically, appellant was charged with "Conspire-Distribution of a Controlled Substance." Therefore, the date of discovery does not hinge on the positive results of the controlled substance, nor were the controlled substance results necessary to support the finding. Penal Code, section 184, states, "No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement and the trial of cases of conspiracy may be had in any county in which any such act be done." Information contained in the rule violation supports the charge as appellant committed "some act" (providing money) along with the agreement (the money was to be used for gas to transport) for the controlled substance to be brought into the institution. Further, appellant was provided a copy of the San Bernardino County Sheriff's Department Crime Report No. DR222202448 within Incident Report, Log No. 42258. Sufficient information was relied upon to reach the preponderance of evidence during the hearing. This claim is denied.

## IV. REMEDY

Your claim has been denied. Therefore, there is no applicable remedy.

**Decision: Denied**

After a thorough review of all documents and evidence available at the time of this written decision, it is the order of the Office of Appeals that this claim is denied. This decision exhausts the administrative remedies available to the claimant within CDCR.

| Staff Signature | Title | Date/Time |
|---|---|---|
| H. Moseley [MOHO002] | Reviewing Authority | 9/9/2023 |